Penny Lee **ANDERSON** and Russell D. Anderson, Plaintiffs,

v.

**CAPITAL ONE BANK**, Defendant.

No. 04–C–0096–C.

United States District Court, W.D. Wisconsin.

Oct. 5, 2004.

---

Thomas J. Lyons, Sr., for plaintiffs.

Russell S. Long, Davis & Kuelthau, S.C., Milwaukee, WI, James R. McGuire, Morrison & Foerster, LLP, San Francisco, CA, for defendant.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action for declaratory, monetary and injunctive relief, plaintiffs Penny Lee Anderson and Russell D. Anderson are suing defendant Capital One Bank for failing to communicate the source of its decision to deny plaintiffs' credit application, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681–1681u, and the Equal Credit Opportunity Act, 15 U.S.C. § 1691–1691f. Jurisdiction is present. 28 U.S.C. § 1331.

Presently before the court are (1) defendant's motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) with respect to plaintiffs' claims under the Equal Credit Opportunity Act and the Fair Credit Reporting Act; and (2) plaintiffs' motion for class certification under Fed.R.Civ.P. 23.

I find that in denying plaintiffs' application for a credit card, defendant complied with the requirements of the Equal Credit Opportunity Act when it explained that it was denying their application because the holder of the primary applicant's Social Security number was reported to be deceased. This is a "sufficient reason" for the denial under the Equal Credit Opportunity Act. Therefore, I will grant defendant's motion on the pleadings as to plaintiffs' claim under that Act.

As to the Fair Credit Reporting Act, plaintiffs have not supported their claim for injunctive relief with any authority. I am persuaded by the language of the statute and the reasoning of other courts that the ability to enjoin conduct in violation of the Act is reserved for the Federal Trade Commission and other agencies. In addition, I conclude that plaintiffs have not established any entitlement to declaratory judgment under the Fair Credit Reporting Act. I conclude that this is not a proper case for class certification both because the issues of law and fact common to the class are overshadowed by the issues relating to the damages incurred by each individual member of the proposed class and the lack of any statutory cap on the maximum award of damages for the class means that the class damages could be far out of proportion to the harm done. Therefore, I will grant defendant's motion for judgment on the pleadings as it relates to plaintiffs' claim for injunctive and declaratory relief and I will deny plaintiffs' motion for class certification.

For the sole purpose of deciding these motions, I find that plaintiffs' complaint fairly alleges the following facts.

## ALLEGATIONS OF FACT

Plaintiffs Penny Lee Anderson and Russell D. Anderson, Sr. are natural persons who reside in the city of New Richmond, Wisconsin. Defendant Capital One Bank is a federally chartered bank and a subsidiary of Capital One Financial Corporation, which focuses on credit card lending through the bank. Defendant has a global customer base of 47,000,000 million and manages loans totaling $70,200,000,000.

On May 29, 2002, plaintiffs applied for Capital One credit cards. Defendant denied plaintiffs' applications because "the person represented by the Primary Applicant's Social Security Number is reported as deceased." Cpt. Exh. # 3. In the letters advising plaintiffs of the denial of their application, defendant did not say which consumer reporting agencies were the sources of these credit reporting errors. Shocked at the reason for the denial, plaintiff Penny Anderson telephoned defendant and was advised to send in copies of her own and Russell Anderson's Social Security cards and the first page of their bank statement.

On April 15, 2003, plaintiff Russell Anderson applied again for a Capital One

credit card and was denied because the holder of the Social Security number he used was reported as deceased. (Plaintiffs do not say whether Russell Anderson sent in a copy of his Social Security card and the first page of his bank account when he re-applied for credit.) Again, defendant did not say in its denial letter which consumer reporting entities were responsible for the erroneous report.

Plaintiffs paid a fee to view their credit reports online in August 2003. Plaintiffs learned that Experian Information Solutions, Inc. and Trans Union LLC were the sources of the consumer credit information contained in defendant's letters of May 29, 2002 and April 13, 2003. Defendant purposefully withheld the identification of these two consumer reporting agencies from plaintiffs in order to protect and foster its business relationship with these agencies. Because of defendant's failure to tell plaintiffs which consumer reporting agencies that were reporting them as deceased, plaintiffs have suffered out-of-pocket damages, loss of productive and leisure time, emotional distress, frustration, fear, humiliation, anxiety and mental distress.

Although plaintiffs did not allege this fact in their complaint, defendant has represented that at some point after plaintiff Russell Anderson's two unsuccessful efforts to obtain a Capital One card, he applied for and received a credit card from defendant. Plaintiffs have not contradicted this representation.

### OPINION

Before reaching the issue of class certification, it is necessary to address defendant's arguments in its motion for judgment on the pleadings that plaintiffs are not entitled to injunctive or declaratory relief under the Fair Credit Reporting Act. The viability of plaintiffs' claims bears on their request for class certification.

### A. *Motion for Judgment on the Pleadings*

A motion for judgment on the pleadings filed pursuant to Fed.R.Civ.P. 12(c) is governed by the same standard that controls Rule 12(b)(6) motions to dismiss for failure to state a claim. *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir.1995). The only difference between the two is that on a Rule 12(c) motion, the court considers the answer as well as the complaint. Under either rule, a claim will not be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### 1. *The Equal Credit Opportunity Act*

"The [Equal Credit Opportunity Act] was originally enacted in 1974 to prohibit discrimination in credit transactions." *Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 975 (7th Cir.2004). "It was amended in 1976 to require creditors to furnish written notice of the specific reasons why an adverse action was taken against a consumer." *Id.* 15 U.S.C. § 1691(d)(3) imposes a duty on creditors to provide "specific reasons" for the taking of any adverse actions against credit applicants. According to the Court of Appeals for the Seventh Circuit, this notice requirement "is not particularly arduous." *Id.* at 975 n. 2. In fact, in outlining the purpose of the notice requirement, the authors of the Senate Report said that it was not intended that " 'statements of reasons be given in the form of long, detailed personal letters ... a short, check-list statement will be sufficient so long as it reasonably indicates the reasons for the adverse action.' " *O'Dowd v. South Central Bell*, 729 F.2d 347, 352 (5th Cir.1984) (quoting S.Rep. No. 589, 94th Cong., 2d Sess. 8 (1976), U.S.Code Cong. & Admin.News 1976, pp. 403, 410). The Senate Report included a sample checklist of reasons that would meet the Act's requirements, such as "length of employment," "lack of credit references," "time in residence" and "too many other credit obligations at this time." *Id.*

Defendant told plaintiffs that it had denied their credit application because plaintiff Russell Anderson's Social Security number had been reported as assigned to a person who was dead. This is a sufficient reason under the Act. Plaintiffs' argument that defendant

should have disclosed the *source* of the reported reason for denial goes beyond the statutory requirements; disclosing each consumer reporting agency that reported plaintiffs as deceased is a more onerous requirement than stating the *reason* for denying plaintiffs' application for credit and defeats the purpose of a short checklist statement that reasonably indicates the reasons for the adverse action. *O'Dowd,* 729 F.2d at 352. Because plaintiffs can obtain no relief under any set of facts that would support their alleged violation of the Equal Credit Opportunity Act, I will grant defendant's motion on the pleadings as to plaintiffs' claim under that Act.

## 2. The Fair Credit Reporting Act

■ Congress enacted the Fair Credit Reporting Act in 1970 to insure that consumer reporting agencies reported accurate information. *Treadway,* 362 F.3d at 982. 15 U.S.C. § 1681m(a) of the Fair Credit Reporting Act requires persons who take adverse action against a consumer in reliance on information contained in a consumer report to provide the consumer with the name, address and telephone number of the consumer reporting agency that furnished the report. Plaintiffs contend that defendant violated this section of the Act when it failed to identify the consumer reporting agencies that were reporting them as deceased. They seek actual, statutory and punitive damages as well as injunctive and declaratory relief.

Defendant has moved for judgment on the pleadings with respect to the claims for injunctive and declaratory relief, arguing that the Act limits private plaintiffs to damages. If defendant is correct, the authority to enjoin conduct in violation of the Fair Credit Reporting Act is reserved for the Federal Trade Commission and other agencies.

Only one federal appellate court has addressed the issue of the propriety of injunctive relief for private plaintiffs. In *Washington v. CSC Credit Services,* 199 F.3d 263 (5th Cir.2000), the court noted that the Act's civil liability provisions "expressly refer to damages and attorney fees without mentioning injunctive relief" (citing 15 U.S.C. §§ 1681n–1681o). In the court's opinion, the omission of any reference to injunctive relief was significant because other sections of the Act give the Federal Trade Commission and other agencies the express power to obtain injunctive relief. *Id.* (citing 15 U.S.C. § 1681s(a), 15 U.S.C. § 45(b) and 15 U.S.C. § 1681s(b)). This affirmative grant of power to the Federal Trade Commission to pursue injunctive relief coupled with the absence of a similar grant to private litigants "persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the Federal Trade Commission." *Id.* See also *In re Trans Union Corp. Privacy Litigation,* 211 F.R.D. 328, 339–40 (N.D.Ill.2002) ("In light of the affirmative grant of such power to the FTC, this court agrees with *Washington* that Congress vested the power to obtain injunctive relief solely with the FTC."). I see no reason to reach a different conclusion, particularly in light of plaintiffs' failure to advance any argument for reading the Fair Credit Reporting Act as authorizing private plaintiffs to obtain injunctive relief. Therefore, I will grant defendant's motion for judgment on the pleadings as it applies to plaintiffs' claim for injunctive relief under the Act.

■ Although plaintiffs seem to concede that injunctive relief is not available to them, they argue that they can obtain declaratory relief. According to plaintiffs, the federal Declaratory Judgment Act, 28 U.S.C. § 2201, permits a court to enter a declaratory judgment even if injunctive relief is not available.

Although the Declaratory Judgment Act allows a court to declare the rights and other legal relations of any interested party seeking such a declaration in a case of actual controversy within its jurisdiction, with certain exceptions not relevant to this case, the "primary purpose of [the Act] is 'to *avoid accrual of avoidable damages* to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued.'" *Cunningham Brothers, Inc. v. Bail,* 407 F.2d 1165, 1167–68 (7th Cir.1969) (emphasis added); *see also In re Trans Union Corp. Privacy Litigation,* 211 F.R.D. at 340 (plaintiffs' request for declaration that defendant violated Fair Credit Re-

porting Act is not type of action contemplated by Declaratory Judgment Act). In the present action, plaintiffs' damages have already accrued, thus eliminating any possible benefit to defendant of an early declaration of plaintiffs' rights.

■ Second, nothing in 15 U.S.C. § 1681n–1681o suggests that plaintiffs are entitled to anything other than damages, attorney fees and costs. Third, it is within the court's discretion to deny declaratory relief when there is available a more complete form of relief, such as damages. *See, e.g., City of Highland Park v. Train,* 519 F.2d 681, 693 (7th Cir.1975) (availability of another remedy does not preclude declaratory relief, but court may properly decline jurisdiction in declaratory action when another remedy would be more effective or appropriate). Fourth, now that plaintiff Russell Anderson has obtained a credit card from defendant, he has no continuing controversy with defendant. (Plaintiffs do not explain why plaintiff Penny Lee Anderson has not obtained a credit card from defendant.) Furthermore, defendant has advised the court that in April 2004 it amended its denial letter to include the name of any credit bureau from which it had obtained a credit report in connection with the rejected application. If there ever were a need for a declaratory judgment, it has vanished. Therefore, I will grant defendant's motion for judgment on the pleadings as it relates to plaintiffs' claim for declaratory judgment under the Fair Credit Reporting Act.

### B. *Motion for Class Certification*

Before a court may certify a class, the plaintiffs must satisfy the requirements of both Rule 23(a) and (b). *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir.1992). Rule 23(a) sets forth four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequate representation. *In re Copper Antitrust Litigation,* 196 F.R.D. 348, 353 (W.D.Wis.2000). These requirements are intended to limit class claims "to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of Northwest v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Rule 23(b) lists three types of class actions that may be maintained; plaintiffs must demonstrate that they qualify for at least one of these.

In addition to the express requirements of Rule 23, courts have recognized two implicit ones. First, the named class representatives must have standing, that is, they must be members of the class they propose to represent. *Rozema v. Marshfield Clinic,* 174 F.R.D. 425, 432 (W.D.Wis.1997) (citing 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure,* § 1785.1, at 139 (2d ed.1986)). Second, the definition of the proposed class must be "precise, objective and presently ascertainable." *Simer v. Rios,* 661 F.2d 655, 669 (7th Cir.1981) (" 'elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable' ") (quoting *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970)); *Copper,* 196 F.R.D. at 353. Class definition is critical because it "identifies the persons (1) entitled to relief, (2) bound by the judgment, and (3) entitled to notice in a Rule 23(b)(3) action." *Manual for Complex Litigation* § 30.14 (3d ed.1999). Therefore, I will determine whether plaintiffs' proposed class definition is ascertainable.

### 1. *Ascertainability*

Plaintiffs propose the following class definition:

> All consumers: to whom Capital One sent its letter # 9, from February 2002 until April 2004; who applied to Capital One with a social security number that the Social Security Death Index neither indicates belongs to a deceased person nor indicates belongs to a person other than the person whose name was given on the application; and who have never had a Capital One account.

Plaintiffs' proposed definition addresses defendant's concerns about ascertainability of the class. Under a previous, broader definition proposed by plaintiffs, defendant had argued that the proposed class would include individuals with no claim, either because the individual was in fact deceased or because the person deliberately or inadvertently used

a deceased person's Social Security number on her credit application. Plaintiffs assert that the Social Security Death Index can identify those persons who are deceased in fact and those who are presumptively identity thieves. Defendant disagrees, pointing out that the index is far from comprehensive because it picks up only reported deaths and does not include many deaths predating 1962, when the index was first computerized.

Despite the imperfections of the index, it is likely to weed out many, if not most, of the persons who used a dead person's number in place of their own; indeed, it should weed out any persons who used any number other than their own when they applied. (Defendant says that plaintiffs are abandoning all of those who submitted someone else's number by mistake; including them would be a logistical nightmare since it would be necessary to determine in each case whether the use of another number was accidental or deliberate. In any event, I am not persuaded that the Fair Credit Reporting Act's sanctions are intended to protect applicants for credit who submit inaccurate applications.)

In addition, according to plaintiffs, one can use defendant's own records to distinguish applicants who had an account with defendant from those who did not. (Defendant does not dispute this assertion.) This distinction is important because applicants who had an account with defendant may be subject to an arbitration agreement with defendant or may owe defendant outstanding balances. Plaintiffs' proposed definition excludes individuals who have ever had an account with defendant, making the proposed class more precise and ascertainable. I conclude that the proposed class is ascertainable. I note also that it excludes plaintiff Russell Anderson, leaving plaintiff Penny Anderson as the only class representative.

### 2. Numerosity

■ Rule 23(a)(1) requires a showing that the number of members in the proposed class is so large as to make joinder "impracticable." Meeting this requirement takes only a good faith non-speculative estimate of the size of the proposed class. *Arenson v. Whitehall Convalescent & Nursing Home,*

*Inc.,* 164 F.R.D. 659, 662–63 (N.D.Ill.1996). Relying on data from a survey performed by defendant, Dft.'s Br., dkt. # 38, at 5, plaintiffs estimate that the class would include 19,840 individuals, including plaintiff Penny Anderson. Defendant does not dispute this conclusion. Because it would be impracticable to join this many individuals, plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1).

### 3. Commonality

■ "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario,* 963 F.2d at 1018. Some factual variation in the details of individual claims does not defeat a finding of commonality. *Id.* at 1017 (citations omitted). Courts give Rule 23(a)(2) a "highly permissive reading," *Markham v. White,* 171 F.R.D. 217, 222 (N.D.Ill.1997), requiring plaintiffs to show only that there is more than one issue of law or fact in common. *Wagner v. NutraSweet Company,* 170 F.R.D. 448, 451 (N.D.Ill.1997).

According to plaintiffs, the common nucleus of operative fact is defendant's repeated act of sending form letters to consumers who were denied credit because they were reported as dead. "Common nuclei of fact are typically manifest where ... the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents." *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir.1998). Defendant admits that it sent approximately 124,000 "declined as deceased" letters identical to plaintiffs' between February 20, 2002 and February 20, 2004. Plaintiffs' proposed class meets the commonality requirement.

### 4. Typicality

■ "The commonality and typicality requirements of Rule 23(a) tend to merge." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *see also Rosario,* 963 F.2d at 1018 ("The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality."). The purpose of both requirements is to "ensure that only

those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class." *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 341 (7th Cir.1997). A named plaintiff's claim is typical if it is based on the same legal theory and arises from the same course of conduct alleged by the other members of the proposed class, *Keele,* 149 F.3d at 595 (citing *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983)), even though there are factual differences between the named plaintiff's claim and the claims of other class members. *De La Fuente,* 713 F.2d at 225. "Typicality under Rule 23(a)(3) should be determined with reference to the [defendant's] actions, not with respect to particularized defenses [the defendant] might have against certain class members." *Wagner v. NutraSweet,* 95 F.3d 527, 534 (7th Cir.1996).

Plaintiffs' Fair Credit Reporting Act claim is typical of the class. Defendant mailed the same "declined as deceased" letters to the proposed class members without identifying any consumer reporting agencies, allegedly in violation of the Fair Credit Reporting Act. This is sufficient to meet Rule 23(a)'s typicality requirement. *Keele,* 149 F.3d at 595 (finding typicality in proposed class where defendants mailed form letters seeking collection fee and plaintiffs alleged violations of same statutory sections under same legal theory).

### 5. *Adequacy of Representation*

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625–626, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (citations and internal quotations omitted). In addition, class counsel must be qualified to conduct the proposed litigation and must not have conflicts with the class. *Id.* at 626, n. 20, 117 S.Ct. 2231.

■ Defendant does not deny that plaintiffs have met their burden of demonstrating that their lawyer is qualified, experienced and able generally to conduct the proposed litigation. Instead, defendant challenges representation by plaintiff Penny Anderson on the grounds that she is willing to limit the recovery of absent class members to statutory damages that cannot exceed $1,000 and has failed to demonstrate a willingness and ability to bear the costs of notifying each class member of the case.

As to defendant's first concern, plaintiffs argue that defendant misrepresents their intentions and the law. In their brief, plaintiffs assert that each class member will be entitled to similar statutory *or* actual damages. Contrary to defendant's argument, plaintiffs have not agreed to limit the recovery of absent class members to statutory damages.

Defendant suggests that plaintiff Penny Anderson lacks the willingness and ability to bear the costs of identifying and notifying each class member of the case. Fed.R.Civ.P. 23(c)(2)(B) requires that in any class action certified under Rule 23(b)(3), the court "direct to class members the best notice practicable under the circumstances, *including individual notice to all members who can be identified through reasonable effort*" (emphasis added); *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Defendant estimates that identifying and notifying each class member could cost at least $100,000. However, plaintiffs have represented that plaintiff Penny Anderson will bear whatever costs of identification are necessary and whatever notice is practicable, including notice by publication. Plts.' Br., dkt. # 44, at 9. I am satisfied that plaintiff meets the adequacy of representation requirement.

### 6. *Predominance and superiority under Rule 23(b)(3)*

■ Although plaintiffs have satisfied the requirements of Rule 23(a), they must also satisfy at least one of the subsections of Rule 23(b). Plaintiffs do not suggest that subsection (1) applies; they cast their lot with either subsection (2) or (3). However, subsection (2) applies only to suits that seek

declaratory or injunctive relief. 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *et al., Federal Practice and Procedure* § 1784, at 77 (2d ed.1986). Now that I have granted defendant's motion for judgment on the pleadings, this form of relief is not available.

Plaintiffs' only remaining claim is for monetary relief under the Fair Credit Reporting Act. Therefore, they must meet the requirements of subsection (3) of Rule 23(b), which allows the maintenance of a class action if "questions of law or fact common to members of the class predominate over any questions affecting only individual members" *and* "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The Supreme Court has summarized this provision as permitting class certification when "a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem,* 521 U.S. at 615, 117 S.Ct. 2231 (citing Fed.R.Civ.P. 23 Advisory Committee Notes); *see also Mejdrech v. Met–Coil Systems Corp.,* 319 F.3d 910, 911 (7th Cir.2003) ("[C]lass action treatment is appropriate and permitted by Rule 23 when the judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a single judge or jury.")

Plaintiffs face an obstacle at the first requirement. It seems clear that defendant violated the technical requirements of § 1681 m of the Fair Credit Reporting Act when it denied plaintiffs' applications for credit without setting forth the names, addresses and telephone numbers of the consumer reporting agencies on whose credit reports it had relied. The only question is whether defendant's violation was wilful, in which case the class members would have the choice of actual or statutory damages, plus the possibility of punitive damages, § 1681n, or whether it was negligent, in which case the class members could recover only for any actual damages they incurred as a result of the omission of the information about the consumer reporting agencies. § 1681o.

At this stage of the proceedings, plaintiffs have not advanced any reasons why defendant might be found to have acted wilfully, other than to allege that defendant wanted to protect and foster its relationship with the consumer reporting agencies. It is a toss up at this point whether plaintiffs can make a showing of wilfulness. If they cannot, each and every class member will be required to prove actual damages in order to recover any amount from defendant. As I have noted, the only harm to plaintiffs and the proposed class is the omission of the names of the consumer reporting agencies from the denial letter. The class cannot claim actionable harm from the omission of the information that the Social Security numbers used in the credit applications were assigned to a deceased person; as to that statement, defendant was in compliance with the law. It is hard to imagine that anyone could have incurred actual damages of any significance as a result of the omission of the names of the consumer reporting agencies. How much would it have cost to call or write defendant to determine what steps to take to correct the false information and then to photocopy a Social Security card and the first page of a bank statement and mail the copies to defendant? Moreover, if applicants had wanted to obtain the names of the reporting agencies so as to be able to correct the information for future applications, plaintiffs have not suggested that they could not have obtained it in the same telephone call or written request.

The second condition of subsection (3) is a showing that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." At this point in the proceeding, plaintiffs have failed to make that showing. Unless and until plaintiffs can demonstrate that they can prove wilfulness, there is no ground at all for a class action. Such an action would consist of nothing other than a determination of the individual damages of that portion of 19,800 people who want to pursue a claim for actual damages.

Moreover, there is more than an element of unfairness in subjecting a defendant to a

suit by a class of 19,840 persons theoretically eligible for awards of $100 to $1000. The potential damages for such a class are wholly out of proportion to the harm done to any of the class members or to all of them together, particularly if plaintiffs cannot show that defendant acted wilfully in omitting the source of its information for its conclusion that the credit applicant was using a Social Security number assigned to someone who was dead. Defendant's violation of the Fair Credit Reporting Act was particularly innocuous, given the reason for its denial of credit. As plaintiffs acknowledge, they could have cured the problem simply by sending defendant copies of their Social Security cards and the first page of a bank statement. They did not need the name of any consumer reporting agency as they would have if defendant had relied on inaccurate adverse reports of their credit histories. In that case, the rejected applicants would have had to work directly with the consumer reporting agencies to convince them that they had made errors in showing bills as unpaid, debts owed and judgments entered. In this instance, however, the only mistake that the agencies made was to show persons as deceased who were still alive. Irritating as the mistake would be to any applicant, it is only an irritant. It is not a complete block to the acquisition of a credit card, as plaintiff Russell Anderson's experience shows.

This case is not one that seeks to vindicate important rights protected by the Act such as those relating to privacy in credit reports or to the dissemination of accurate credit information. Defendant's violation did not relate to either of these rights; its violation was omitting certain information from a letter denying credit. Penalties in the form of damages in the neighborhood of $12,000,000 (assuming that each class member were awarded the maximum amount of $1000 in statutory damages), plus punitive damages, or even 2,000,000 (assuming that each member were awarded the $100 minimum in statutory damages) would not be necessary to motivate defendant's compliance with the Act even if defendant had not corrected its letters already. (Oddly enough, Congress has not set caps on the amount of class action damage awards under the Fair Credit Re-

porting Act as it has under five of the other six subchapters of the Consumer Credit Protection Act, including 15 U.S.C. § 1640(a)(2)(B) (setting a cap of the lesser of $500,000 or one percent of the net worth of the creditor for actions under the Truth in Lending Act, 15 U.S.C. §§ 1601–49 and the Consumer Leasing Act, 15 U.S.C. § 1667–77); 15 U.S.C. § 1691e(b) (same limit for class action suits under the Equal Credit Opportunity Act); 15 U.S.C. § 1692k (Fair Debt Collection Practices Act); and 15 U.S.C. § 1693m(a)(2)(B) (Electronic Funds Transfer Act), despite the fact that much of the prohibited conduct in these subchapters is far more egregious than defendant's omission of the sources of the information that plaintiff Russell Anderson's Social Security number was assigned to a person who was deceased. *See, e.g.,* 15 U.S.C. § 1691, prohibiting discrimination by creditors on the basis of race, color, religion, national origin, sex, marital status or age, and 15 U.S.C. § 1692, prohibiting abusive, deceptive and unfair debt collection practices.)

Finally, a class action is not necessary to give injured parties an opportunity for relief that would be too expensive to obtain if they were limited to individual suits. If indeed there are other persons who believe that they were injured by receipt of the kind of letter plaintiffs received, they have an incentive to sue. Not only can they receive up to $1000 in statutory damages or any amount of actual damages they incurred plus punitive damages if they can prove wilfulness and actual damages if they prove only negligence, but their suits are essentially costless because they are entitled to an award of the attorney fees and costs they incur in bringing suit. §§ 1681n(a)(3) and 1681o (a)(2). The court of appeals has held that where individual claims are of significant value, class certification is less appropriate. *Cf., Nagel v. ADM Investor Services, Inc.,* 217 F.3d 436, 443 (7th Cir.2000) ("[E]ach class member had a sufficiently large stake to be able to afford to litigate on his own—a consideration that weighs against allowing a suit to proceed as a class action."); *Frahm v. Equitable Life Assurance Society,* 137 F.3d 955, 957 (7th Cir. 1998) ("Individual rather than class litigation

is the best way to resolve person-specific contentions when the stakes are large enough to justify individual suits."). Plaintiffs' claim of $25,000 for their emotional distress is not a small claim. According to plaintiffs, other class members have similar damage claims. If so, they have more than adequate incentive to pursue their own actions against defendant.

I conclude that plaintiffs have failed to carry their burden of showing that certification of a class action would meet the predominance and superiority requirements of Rule 23(b)(3). Therefore, I will deny their motion for class certification.

## ORDER

IT IS ORDERED that

1. Defendant Capital One Bank's motion for judgment on the pleadings as to plaintiffs Penny Lee Anderson and Russell D. Anderson's claim under the Equal Credit Opportunities Act is GRANTED;

2. Defendant's motion for judgment on the pleadings is GRANTED as to plaintiffs' claims for injunctive and declaratory relief under the Fair Credit Reporting Act;

3. Plaintiffs' motion for class certification under Fed.R.Civ.P. 23 is DENIED.