WILKINSON, Circuit Judge,
concurring specially:
There is much in the court’s opinion with which I agree. I am pleased that the court adopts a per-consumer rather than a per-receipt interpretation of 15 U.S.C. § 1681n(a).* Additionally, I agree with *276 the court that the district court on remand should consider other factors that bear upon the issue of class certification. Specifically, neither this court nor the district court has yet addressed the real possibility that the suggested class could bankrupt an entire chain of supermarkets, and the district court retains wide discretion in deciding whether to certify a class in light of that problem.
I worry that the exponential expansion of statutory damages through the aggressive use of the class action device is a real jobs killer that Congress has not sanctioned. To certify in cases where no plaintiff has suffered any actual harm from identity theft and where innocent employees may suffer the catastrophic fallout could not have been Congress’s intent. Indeed, the relatively modest range of statutory damages chosen by Congress suggests that bankrupting entire businesses over somewhat technical violations was not among Congress’s objectives.
It is undeniable that Congress passed FACTA to protect consumers from the real threat of identity theft. It is clear as well that Congress did not intend willful repeat violators of FACTA to emerge from litigation with nothing more than a wrist slap. It is understandable too that this court and many others have struggled with the interaction of FACTA and Federal Rule of Civil Procedure 23. I see nothing in the statute, however, that mandates class action treatment of FACTA claims or precludes a district court from considering the prospect of annihilative liability in the certification calculus.
I.
Certainly nothing in 15 U.S.C. § 1681n(a)(l) would lead us to believe that Congress intended the modest range of statutory damages to be transformed into corporate death by a thousand cuts through Rule 23. “A claim of this sort creates a tension between the statutory provisions for minimum damages and the Rule 23 provisions for class actions that probably was not within the contemplation of those who promulgated either the statute or the rule.” Parker v. Time Warner Entertainment Co., 331 F.3d 13, 26 (2d Cir.2003) (Newman, J., concurring). Simply put, the present case is a perfect storm in which two independent provisions combine to create commercial wreckage far greater than either could alone. As Judge Newman explained in a similar situation involving statutory damages for cable subscribers, “I do not believe that in specifying a $1,000 minimum payment for ... violations, Congress intended to expose [violators] to liability for billions of dollars.” Id. at 27. The same statement applies with equal force to FACTA’s $100 to $1,000 statutory damages range.
A.
The statute itself affords reason to believe that Congress did not insist on adopting the class mechanism at all costs. Regardless of whether common liability issues in this case predominate over individualized damage determinations, it remains true that Congress did provide for individualized damage determinations in FACTA. This fact cuts against the argument that Congress wished to compel consolidated suits through class certification.
*277 There are several indications in FACTA that damages are individualized. First, statutory damages are not fixed; instead, Congress provided that they may range anywhere from $100 to $1,000. 15 U.S.C. § 1681n(a)(l)(A). The statute does not specify what factors a jury should consider when selecting a number within this range. But because statutory damages are intended to address harms that are small or difficult to quantify, evidence about particular class members is highly relevant to a jury charged with this task. Had Congress adopted a set figure for statutory damages rather than a range dependent on variable evidence, the case for class certification would have been fortified.
Second, the compensatory nature of FACTA statutory damages suggests class certification is not congressionally mandated. The most powerful indication that Congress intended statutory damages to be compensatory comes from the structure of FACTA’s remedial provisions. Notably, Congress provided that a consumer subject to a willful violation of the statute could recover either actual or statutory damages, but not both. 15 U.S.C. § 1681n(a)(l)(A). The fact that statutory damages are available in lieu of actual damages suggests that they too serve to compensate individual consumers for their injuries. See In re Trans Union Corp. Privacy Litig., 211 F.R.D. 328, 342 (N.D.Ill.2002) (“[Section] 1681n(a)(l)(A) clearly and unambiguously allows for actual or statutory damages as the measure of compensatory damages.”) (second emphasis added). Congress also provided for punitive damages in addition to any actual or statutory damages. 15 U.S.C. § 1681n(a)(2). That Congress did so highlights the fact that statutory damages serve a compensatory, rather than punitive, function in FACTA’s remedial scheme.
It is not difficult to discern why Congress would allow consumers to select statutory damages rather than actual damages as a measure of compensation. While some violations of FACTA will lead to easily quantifiable harms, other violations may lead to less tangible ones, such as a loss of privacy, heightened risk and anxiety over identity theft, or increased time spent monitoring one’s financial security. In order to help a jury place a value on these intangible harms, FACTA provides for statutory damages between $100 and $1,000. It is still up to a jury, however, to select a figure within this range, and the individualized nature of this determination is strong evidence that class treatment may not be the required course under FACTA.
B.
That the court notes (correctly, in my view) that statutory damages are available on a per-consumer rather than per-receipt basis further underscores the point that Congress did not demand class certification in FACTA. The per-consumer perspective places the focus on the characteristics of individual class members, rather than on the defendant’s conduct that is common to the entire class. To protect “the right of the defendant to present facts or raise defenses that are particular to individual class members,” Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 318 (4th Cir.2006), businesses deserve at least the opportunity to argue that certain individuals should receive statutory damages at the low end of the range. Weis Markets, for example, might do so by putting on evidence that some class members were issued very few noncompliant receipts, rarely if ever checked their credit reports, or experienced no heightened apprehension of identity theft. While the class here excludes those who suffered actual dam *278 ages due to identity theft, it surely includes members who experienced varying levels of less quantifiable harms. Assessing these harms clearly “does not lend itself to ... a mechanical calculation.” Windham v. Am. Brands, Inc., 565 F.2d 59, 68 (4th Cir.1977) (en banc). All of these facts suggest that Congress did not contemplate a class action as the exclusive route for FACTA suits.
II.
Congress acts, of course, against the backdrop of the Federal Rules, and we must assume it knows not only of Rule 23’s utility, but also that the Rule is not an end unto itself. It is a case management device, and a flexible one at that. The Rule is the ultimate expression of flexibility, providing a non-exclusive list of broad factors for courts to consider. See Fed. R.Civ.P. 23(b)(3)(A)-(D). Notably, its flexible nature indicates that district courts have broad discretion to consider factors that may bear on the desirability of proceeding down the road of class treatment.
Certifying a class action that would impose annihilative damages where there has been no actual harm from identity theft could raise serious constitutional concerns, as plaintiffs themselves admit. See Reply Br. at 2 n. 2. Other courts have noted that “the potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues.” Parker, 331 F.3d at 22. See also Spikings v. Cost Plus, Inc., No. CV 06-8125-JFW (AJWx), 2007 U.S. Dist. LEXIS 44214, at *9, 13 (C.D.Cal. May 25, 2007) (same). Indeed, this principle has some salience in the punitive damages context, where the Supreme Court has noted that “[t]he Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor.” State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).
Rather than considering annihilative damages as they bear on due process, however, it is preferable for a district court to address them in the context of Rule 23(b)(3)’s superiority requirement. Doing so gives the district court discretion to avoid a serious constitutional problem in the best tradition of the Brandéis concurrence in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936), and permits a district court to declare that a device is not superi- or when a plaintiff class whose members suffered no identity theft of any sort still threatens to wipe an entire company off the map.
It is fair to observe that a primary focus of Rule 23 is upon procedural efficiencies, but that is not its sole concern. A district court has discretion to consider other factors as well. “Within that discretion ... is the attaching of determinative weight to the reality that if class action treatment were applied in this case where the complaint contains no indication of any actual damages in substantial or provable amount, this aggregated relief would be oppressive in consequence and difficult to justify.” Wilcox v. Commerce Bank of Kansas City, 474 F.2d 336, 347 (10th Cir.1973). See also London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1255 n. 5 (11th Cir.2003) (class action may not be superior where “the defendants’ potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff.”); Kline v. Coldwell, Banker & Co., 508 F.2d 226, 235 (9th Cir.1974) (same).
Finally, the flexibility of Rule 23 is also reflected in the generous abuse of discretion standard under which district court *279 certification decisions are reviewed. As we have repeatedly explained, “[a] district court has broad discretion in deciding whether to certify a class.” Thorn, 445 F.3d at 317 (quoting Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir.2001)). Certification decisions “will be reversed only upon a showing of abuse of that discretion.” Boley v. Brown, 10 F.3d 218, 223 (4th Cir.1993); McClain v. South Carolina Nat'l Bank, 105 F.3d 898, 902 (4th Cir.1997) (same). We afford this discretion to district courts for good reason. Class certification is “a practical problem, and primarily a factual one with which a district court generally has a greater familiarity and expertise than does a court of appeals.” Windham, 565 F.2d at 65 (citation omitted). Given this, I would urge caution in requiring district courts to adopt a procedural device that cuts against the grain of practical justice as the trial courts conceive it.
III.
A.
In light of the broad flexibility embodied in Rule 23, I am pleased that the court instructs the district court on remand to consider alternative reasons that bear upon class certification. See Maj. Op. at 275. Specifically, the district court previously reserved ruling on “the contention that the possibility of ‘annihilating results’ disproportionate to any harm renders class certification inappropriate.” Stillmock v. Weis Markets, Inc., No. MJG-07-1342, 2009 WL 595642, at *6 (D.Md. March 5, 2009). The court rightly permits the district court to undertake that inquiry.
The risk of financial ruin as a result of class certification is far from illusory. Weis Markets estimates that it printed 14,578,600 receipts with improperly truncated account numbers between the time FACTA became effective on December 4, 2006 and the time the company brought its systems into compliance on June 7, 2007. Because FACTA establishes statutory damages between $100 and $1,000, under plaintiffs’ per-receipt approach, Weis Markets would thus be subject to a massive payout of between $1.4 and $14 billion.
The court’s per-consumer calculation, while less astronomical, is no less annihilating to Weis Markets. Both plaintiffs and Weis Markets have estimated that “there are potentially over one million Class members.” Multiplying that estimate by the statutory damages range results in total liability of between $100 million and $1 billion dollars, without even accounting for the possibility of punitive damages, attorney’s fees, and costs, 15 U.S.C. § 1681n(a)(2), (a)(3).
It is no exaggeration to say that a judgment within this range would devastate Weis Markets. As counsel for Weis Markets put it, “a hundred million dollars sinks my client.” The company is traded on the New York Stock Exchange, and its market capitalization at current prices is just over $900 million dollars. In other words, this case is not just the proverbial bet-the-company suit; a class action, if successful, will shatter the entire company into hundreds of thousands of $100 to $1,000 bits. The plaintiffs here might as well seek to distribute every one of Weis Markets’ 26.9 million shares a few apiece to each receipt holder.
Nor is the destruction of Weis Markets a loss only to shareholders. If plaintiffs are successful, a substantial number of people will be left unemployed in one of the toughest job markets in generations. Weis Markets currently owns and operates one hundred sixty-four retail grocery stores in Pennsylvania, Maryland, New York, New Jersey, and West Virginia as *280 well as twenty-five pet supply stores. Weis Markets, Inc., Annual Report (Form 10-K), at 1 (Mar. 11, 2010). Approximately 17,600 individuals work for the company in either a full — or part-time capacity. Id at 2. It is doubtful that Congress intended to cause these thousands of innocent employees to lose their jobs and paychecks by bankrupting their employer, in a situation where no plaintiff suffered identity theft.
None of this is to condone the actions of Weis Markets. Without prejudging the matter of willfulness, there are preliminary indications that the company acted very badly. There is no dispute that Weis Markets printed over 14 million receipts that violated FACTA; the outstanding liability issues in this case hinge on whether it did so willfully or merely negligently. Moreover, compliance with FACTA did not involve untangling a complex regulatory scheme, but merely issuing receipts to cardholders revealing no more than the last five digits of their card number. Still, it must count for something that this class, by definition, consists of individuals who can claim only statutory damages. It staggers the imagination to believe that Congress intended to impose annihilating damages on an entire company and the people who work for it for lapses of a somewhat technical nature and in a case where not a single class member suffered actual harm due to identity theft.
B.
Nor is the problem of annihilating liability by any means limited to the present case. District courts across the country are struggling with what one court termed a “veritable onslaught” of class action litigation under FACTA, subjecting companies small and large to extraordinary claims. Palamara v. Kings Family Restaurants, No. 07-317, 2008 WL 1818453, at *3 (W.D.Pa. Apr.22, 2008). Ordinarily, a company that violates FACTA will do so not once or twice, but instead thousands or even millions of times, owing to the fact that it has not properly updated its equipment. And because FACTA provides for statutory damages of at least $100, such suits almost by definition expose companies to liability that is orders of magnitude beyond their income or net worth, regardless of the size of the corporation. “FAC-TA class actions threaten businesses of every size with devastating classwide liability for what may be harmless statutory violations.” 1 McLaughlin on Class Actions § 2:38 (6th ed.).
On one end of the spectrum, such suits jeopardize “mom and pop” stores, such as the local restaurant with a mere $40,000 in net assets that last year faced a $4.6 to $46 million FACTA suit in which none of the putative class members suffered any actual injuries as a result of identity theft. Leysoto v. Mama Mia I, Inc., 255 F.R.D. 693, 697-98 (S.D.Fla.2009). A similar suit went a step further, seeking FACTA statutory damages “between $3.3 million and $33 million” from a company “whose consolidated financial statements ... show[ed] a net loss of $5.5 million and a total negative net worth of $8.1 million.” Price v. Lucky Strike Entertainment, Inc., No. CV 07-960-ODW (MANx), 2007 WL 4812281 at *5 (C.D.Cal. Aug.31, 2007) (emphasis added).
And small or struggling companies are not the only ones threatened by claims far out of proportion to their ability to satisfy them. One defendant with net income of just over $68 million recently faced a putative class action seeking between $198 million and $1.98 billion. Blanco v. CEC Entm’t Concepts L.P., No. CV 07-0559 GPS (JWJx), 2008 WL 239658, at *2 (C.D.Cal. Jan.10, 2008). Other corporations have faced similarly astronomical claims relative to their size. See, e.g., *281 Spikings v. Cost Plus, Inc., No. CV 06-8125-JFW (AJWx), 2007 U.S. Dist. LEXIS 44214, at *12 (C.D.Cal. May 29, 2007) (company with net worth of $316 million faced FACTA class seeking $340 million to $3.4 billion); Lopez v. KB Toys Retail, Inc., No. CV 07-144-JFW (CWx), 2007 U.S. Dist. LEXIS 82025, at *14 (C.D.Cal. July 17, 2007) (even $100 per violation in proposed FACTA class was 600% of defendant’s net worth). I suppose it can be assumed that shareholders and creditors bear such litigation risks. But employees? These liabilities will fall hardest on those who are laid off because of them.
C.
In addition to the risk of bankrupting entire companies for violations in which no identity theft resulted, there is an additional problem with combining statutory damages and class certification. Companies may be forced to settle in the face of such annihilating liability, even if they have a strong defense. In such an event, the substantial costs associated with settlement will inevitably be passed on to consumers — the very ones whom Congress sought to protect.
As the Seventh Circuit explained, there is a serious concern with forcing these “defendants to stake their companies on the outcome of a single jury trial, or be forced by fear of the risk of bankruptcy to settle even if they have no legal liability.” Matter of Rhone-Poulenc Rorer Inc., 51 F.3d 1293, 1299 (7th Cir.1995). Indeed, “[t]he risk of facing an all-or-nothing verdict presents too high a risk, even when the probability of an adverse judgment is low.” Castano v. Am. Tobacco Co., 84 F.3d 734, 746 (5th Cir.1996); see also Coopers & Lybrand v. Livesay, 437 U.S. 463, 476, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (same). “[Ojnce a class is certified, a statutory damages defendant faces a bet-the-company proposition and likely will settle rather than risk shareholder reaction to theoretical billions in exposure even if the company believes the claim lacks merit.” Sheila B. Scheuerman, Due Process Forgotten: The Problem of Statutory Damages and Class Actions, 74 Mo. L.Rev. 103, 104 (2009). At least the plaintiffs in Rhone-Poulenc and Castaño alleged substantial actual damages; here we face the risk of forcing a defendant to settle in the face of billions in liability for actions that resulted in not a single instance of identity theft.
Nor does the possibility of appellate review eliminate the problem of uneconomic settlement. “The reason that an appeal will come too late to provide effective relief for these defendants is the sheer magnitude of the risk to which the class action, in contrast to the individual actions pending or likely, exposes them.” Rhone-Poulenc, 51 F.3d at 1297 (emphasis in original). Weis Markets and similar companies could hardly be blamed if they took a safe route and settled in such circumstances. “If they settle, the class certification — the ruling that will have forced them to settle — will never be reviewed.” Id. at 1298. To effectively allow certification to deprive a party of a defense cannot be what the adversary process is about.
IV.
Is there a solution — one that gives the statute its proper meaning and effect without visiting consequences far in excess of what Congress intended? Judge Newman, when addressing a similar statute, has suggested two solutions to the problem. One is to award class members statutory damages below the amount authorized by Congress. Parker, 331 F.3d at 27 (Newman, J. concurring). But as he acknowledges, that suggestion suffers a prohibitive drawback because it “cannot be reconciled with *282 the terms of the statute.” Id. His second suggestion of allowing a district judge to determine “that a class will be certified only up to some reasonable aggregate amount of [statutory] damages,” id. at 28, fares little better because unlike similar exercises of judicial discretion, remittitur for example, the judiciary here would simply be adding a capping provision to a federal statute which Congress in its wisdom did not see fit to include. Congress of course remains free to adopt such a cap, as it has done for instance in limiting class action recoveries under the Truth In Lending Act to the lesser of $500,000 or 1 percent of a creditor’s net worth, 15 U.S.C. § 1640(a)(2)(B), but it has not done so here.
The question, then, is whether the denial of class action treatment will allow proven violators of a statute to escape largely untouched. I do not believe that we are faced with a choice of class certification and its potentially lethal consequences or the denial of such certification and the prospect of impunity for the non-compliant.
There is no shortage of incentives for consumers to bring individual suits under FACTA. The act provides plaintiffs with both costs and reasonable attorney’s fees “in the case of any successful action” establishing willful or negligent violations. 15 U.S.C. §§ 1681n(a)(3), 1681o (a)(2) (emphasis added). These suits are, therefore, “essentially costless” to winning plaintiffs. Anderson v. Capital One Bank, 224 F.R.D. 444, 453 (W.D.Wis.2004). They are potentially quite rewarding as well. For one thing, actual damages remain available in any case of identity theft. 15 U.S.C. § 1681n(a)(l)(A). For another, the possibility of punitive damages exists in cases where their imposition is needed for appropriate punishment and deterrence. 15 U.S.C. § 1681n(a)(2). For a third, the possibility of offensive collateral estoppel with regard to liability exists for prospective plaintiffs, of whom in this case there are many. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).
Thus I am not convinced that the denial of class certification with its possibilities of annihilative consequences would allow companies who violate the statute to emerge laughing and unscathed. FACTA “provides sufficient motivation for adversely affected individuals to bring suit and for attorneys to represent them.” Campos v. ChoicePoint, Inc., 237 F.R.D. 478, 490 (N.D.Ga.2006). This is especially so since the costs of compliance with the statute remain minor in comparison to the costs of dealing with litigation, in whatever form it may assume. For the above reasons, I believe it well within a district court’s discretion to consider the magnitude of the costs upon the company and its employees that class certification may impose. Allowing such consideration will not leave the statute toothless, nor fly in the face of any congressional mandate, nor court the constitutional problems associated with constraining district court discretion provided by Federal Rule of Civil Procedure 23. Because I do not understand the court’s judgment to preclude the exercise of discretion in this manner upon remand, I respectfully offer this special concurrence.

 Section 1681n provides that any person who willfully violates the statute "with respect to any consumer is liable to that consumer ” for, among other things, actual or statutory damages. 15 U.S.C. § 1681n(a) (emphasis added). The statute’s emphasis on the consumer reflects a per-consumer rather than a per-receipt approach to damages. This interpretation draws additional support from Safeco Insurance Company of America v. Burr, 551 U.S. 47, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007), where the Supreme Court read the statute to provide that "the consumer may have actual damages, or statutory damages ..., and even punitive damages." Id. at 53, 127 S.Ct. 2201 (emphasis added). Moreover, *276 were we to adopt a per-receipt approach, FACTA would be transformed from a shield for protecting consumer privacy into a sword for dismembering businesses. Opportunistic cardholders could intentionally make hundreds, if not thousands, of purchases, hoard their receipts, and stream into federal court to collect statutory damages on each one. The potential for such abuse counsels against the plaintiffs' preferred per-receipt interpretation.