James **GREENWAY** and Laurie Greenway, husband and wife, on behalf of themselves and others similarly situated, Plaintiffs,

v.

**INFORMATION DYNAMICS, LTD.,** a California Corporation, Defendant.

No. Civ. 74–313 Phx. WPC.

United States District Court, D. Arizona.

Sept. 16, 1974.

Lawrence C. Wright, Daniel J. McAuliffe, Snell & Wilmer, Phoenix, Ariz., for plaintiffs.

Jordan L. Green and Jack M. Anderson, Phoenix, Ariz., for defendant.

## MEMORANDUM AND ORDER GRANTING PRELIMINARY INJUNCTION

COPPLE, District Judge.

Plaintiffs, alleging violations of the provisions of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.,* seek a preliminary injunction (Count 1 of the complaint) on behalf of themselves and all other persons similarly situated. Jurisdiction is conferred by 15 U.S.C. § 1681p.

The defendant, Information Dynamics, Ltd. (hereinafter "IDL") is a California corporation that conducts its business operations in California, Arizona, New Mexico, Colorado, Utah and Wyoming. IDL's business consists in large part of providing merchants who subscribe to its services with information on the check cashing histories of potential customers. It is the manner in which IDL conducts this business that gives rise to the instant controversy.

The IDL "data base" is gathered through reports from merchants who subscribe to IDL's services. These merchants report to IDL the names of those individuals from whom they have received checks which have, for whatever reason, not been honored by the bank upon which they were drawn. Other information, such as the individual's checking account number, his or her driver's license number, and the reason for return of the check is also furnished to IDL. IDL then compiles all the information garnered from each individual subscribing merchant, and regularly disseminates it to *all* its subscribing merchants.

This dissemination is accomplished by distributing to subscribing merchants microfilm or microfiche lists, and Holoscan Film and bulletins. Each subscribing merchant is given a machine which permits him to "read" the information set forth on these lists. Once in possession of these lists, each IDL subscriber can ascertain the name, driver's license number and checking account number of every individual who has had a check returned to *any* of IDL's subscribers during the period covered by the report. The merchant can also ascertain the number of checks thus returned, and, in many cases, the reasons for their return.

The ostensible purpose of this service is to enable a merchant who is presented with a check from a customer to ascertain whether that particular customer has had check cashing difficulties with any of IDL's subscribing merchants in the past. However, as should be apparent, each merchant is provided with the names and check cashing histories of thousands of individuals with whom they will never transact business. It is this systematic over-dissemination of credit information that lies at the heart of this controversy.

The information is secured and disseminated by use both of the U. S. mail and telephone service.

The FRCA was enacted by Congress in 1970 to inject a much-needed degree of responsibility into the burgeoning consumer credit reporting industry. In passing the Act, Congress specifically found, in 15 U.S.C. § 1681(a)(4),

There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, *and a respect for the consumer's right to privacy.* (emphasis added)

To assure that this need was served, Congress imposed various requirements upon "consumer reporting agencies" in their compilation and dissemination of "consumer reports." The primary question presented is whether the activities of IDL fall within the scope of the FCRA.

The Act defines a "consumer reporting agency" to be any person or institution which "regularly engages in whole or in part in the practice of assembling or evaluating consumer-credit information or other information on consumers for the purpose of furnishing consumer reports to third parties. . . ." 15 U.S.C. § 1681a(f). A "consumer re-

port" is defined in 15 U.S.C. § 1681a(d):

. . . any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family or household purposes, or (2) employment purposes, or (3) *other purposes authorized under section 1681b of this title*. . . . (emphasis added)

As stated by this latter section, § 1681b, one of the purposes for which disclosure of consumer information is authorized is to a person whom the disseminator has reason to believe:

(E) otherwise has a legitimate need for the information *in connection with a business transaction involving the consumer*. (emphasis added)

Certain types of reports, not pertinent here, are excepted from this definition.[1]

 When these two sections of the Act, § 1681a(d) and § 1681b(3)(E), are read together, as the Act indicates they must be, the result is clear: When an agency disseminates information bearing on any of the seven characteristics of a consumer listed in § 1681a(d) to a third party, and the agency knows or expects that it will be used "in connection with a business transaction involving the consumer," then that information is a "consumer report" and its originator is a "consumer reporting agency." The information disseminated by defendant clearly bears on some if not all of the factors listed in the definition of a "consumer report" above.

Recent judicial determinations are in accord with this interpretation of the FCRA. Thus, in *Beresh v. Retail Credit Co., Inc.*, 358 F.Supp. 260 (C.D.Cal. 1973), the court held that investigative reports, ordered by an insurance carrier, on the extent of its insured's disability, which were used to terminate disability payments, were "consumer reports" under FCRA because they were ordered and prepared "in connection with a business transaction." See also administrative interpretations by the Federal Trade Commission, 4 CCH Consumer Credit Guide paragraphs 11,304-5, 99,525 and 99,531.

 The Court concludes that the microfiche lists as disseminated by IDL fall within the purview of this section of the Act. Their conceded purpose is to furnish subscribing merchants with information on consumers who may tender checks in payment for purchases so that the subscriber may decide whether or not to accept the check. Clearly, the expectation is that the information will be used by IDL subscribers in connection with a business transaction—a purchase of goods or services—between the subscriber and the consumer. The undisputed facts in this proceeding indicate that these consumer reports are being disseminated in violation of the express provisions of that Act.

 The FCRA is quite clear on the scope of dissemination permissible for consumer reports. Thus, 15 U.S.C. § 1681b provides in pertinent part:

A consumer reporting agency may furnish a consumer report under the following circumstances *and no other*:

\* \* \* \* \* \*

(3) To a person which it has reason to believe—

(A) intends to use the information in connection with a credit transaction involving the consumer on

---

1. The most significant exception is a report of "information solely as to transactions or experiences between the consumer and the person making the report." 15 U.S.C. § 1681a(d)(A). As IDL has no transactions with the consumers whose names appear on their reports, but merely reports their transactions with IDL subscribers, the exemption is clearly inapplicable.

whom the information is to be furnished and involving the extension of credit to or review or collection of an account of, the consumer; or

\* \* \* \* \* \*

(E) otherwise has a legitimate business need for the information in connection with a business transaction involving *the* consumer. (emphasis added)

The limitation on distribution is quite explicit. Information on a particular consumer may only be provided to a third party who requires it in connection with a specific transaction between that party and *that particular consumer.* IDL's information dissemination practices clearly fail to comply.

▪ Periodically, each IDL subscriber receives a microfiche list which contains check cashing information about hundreds, if not thousands, of individuals. While it is obviously anticipated that the merchant will become involved in business transactions with some of the individuals on this list, it is conceivable that the merchant will never do business with any of the individuals listed. In any event, it is totally inconceivable that any subscriber could ever have transactions with everyone listed. Clearly, then, each subscribing merchant receives a wealth of information on individual consumers for which that merchant will *never* have a legitimate business need.

Dissemination practices such as IDL's have been condemned in the strongest terms by the FTC. In regulations dealing with so-called "credit guides," which listed consumers and gave them credit ratings, and were disseminated to all members of credit bureaus, the Commission indicated:

. . . It is apparent that at the time these series of consumer reports are distributed, no permissible purpose for obtaining these reports exists, in accordance with the provisions of section 604. That is, though a recipient of the credit guide may have a permissible purpose for obtaining credit information on one or more of the consumers whose names are contained in the "guide," no recipient could conceivably ever have a transaction with every individual whose name is contained therein. Additionally, *the permissible purpose for furnishing the consumer report must exist at the time the request for the report is made; it is not enough to obtain the consumer report in anticipation that a permissible purpose will arise subsequently.* 16 C.F.R. § 600.1(c). (emphasis added)

\* \* \* \* \* \*

. . . Businesses that have need of information on a consumer, and have a right to that information because, for example, the consumer is applying for credit, are expected to contact the consumer reporting agency as the need arises. 16 C.F.R. § 600.-1(d).

Defendant is acting, and, unless restrained will continue to act, in violation of the FCRA as discussed above.

▪ The Court further finds that plaintiffs' claims for injunctive relief are representative of the alleged class consisting of all persons whose names have in the past or presently appear on the various lists collected and disseminated as above by defendant. The class is so numerous that joinder of all members is impractical. There are questions of law and fact common to all members of the class and the representative parties and their counsel will fairly and adequately protect the class. The Court also finds that the defendant opposing the class has acted on grounds generally applicable to the class thereby making appropriate preliminary and probably final injunctive relief with respect to the class as a whole. The Court holds that Count 1 of the complaint is maintainable as a class action pursuant to Rule 23(b)(2), Fed.R.Civ.P.

The foregoing shall constitute the Court's findings of fact and conclusions of law in support of this order.

It is ordered:

▪ 1. Until further order of this Court the defendant, its successors, as-

signs, subsidiaries and transferees, and its officers, directors, agents, servants, employees and all other persons in active concern or participation with them, are hereby preliminarily enjoined and restrained from, in any manner, directly or indirectly, circulating or distributing general lists, whether on microfilm, microfiche, or whatever form, containing names of persons together with information in any form as to them relating to any of the following:

(a) History or number of checks returned unpaid for any reason.

(b) Any information bearing on or affecting credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living.

2. The foregoing is conditioned upon plaintiffs' posting security satisfactory to the Court in the amount of Five Thousand Dollars ($5,000.00), pursuant to Rule 65(c) Fed.R.Civ.P.

3. The above orders are stayed for a period of thirty (30) days to enable defendant to appeal and, if appeal is timely perfected, until the determination thereof.