**Eugelio ARCILLA, individually and on behalf of all others similarly situated Plaintiff,**

v.

**ADIDAS PROMOTIONAL RETAIL OPERATIONS, INC., Defendants.**

**No. CV07–0211GAF (SHX).**

United States District Court, C.D. California.

May 4, 2007.

Ira Spiro, James Mark Moore, Spiro Moss Barness, Los Angeles, CA, for Plaintiff.

Martin L. Fineman, Sameh N. Dawood, Davis Wright Tremaine, San Francisco, CA, for Defendants.

## ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

FEESS, District Judge.

## I.

## INTRODUCTION & BACKGROUND

This putative class action is one of as many as 70 filed in the Ninth Circuit under a provision of the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), which requires retailers to truncate the information on customers' credit card receipts. The allegations in this case apparently resemble those in the others. Plaintiff Eugelio Arcilla claims that on January 3, 2007, he bought an item at a retail store operated by Defendant Adidas Promotional Retail Operations ("Adidas"), and that Adidas printed him a receipt containing information that FACTA prohibited— namely, the expiration date of his credit card. (Compl.¶ 10.) Arcilla claims Adidas printed this information knowingly and that in doing so, it knowingly violated his FACTA rights or at least recklessly disregarded them. (*Id.* ¶ 11.) Arcilla also alleges Adidas has printed improper infor-

mation on the receipts of approximately 10,000 other consumers, including expiration dates as well as more than the last five digits of the card numbers. (*Id.* ¶¶ 13, 18a.)

On behalf of this putative class, Arcilla asserts a single claim for violation of the FACTA and seeks: (1) statutory damages of between $100 and $1000 per prohibited transaction; (2) punitive damages; and (3) costs, attorney's fees, interest, and nominal damages. (*Id.* at 9–10.) And although Arcilla disclaims actual *damages* as too difficult to prove, he alleges that he and potential class members suffered actual *harm* due to increased risk of identity theft. (*Id.* ¶ 23.)

Adidas now moves to dismiss the Complaint for failure to state a claim or, alternatively, to strike the prayer for punitive damages. Adidas argues: (1) it could not have willfully violated the FACTA because the statute is vague and ambiguous; (2) the Complaint seeks statutory damages that would be constitutionally excessive and thus violate due process because no actual harm has been suffered; (3) the statutory damages would violate "principles of tort law" because Plaintiff and the potential class members have suffered no actual harm; (4) the request for punitive damages is improper because any such damages would be excessive absent an allegation of actual harm.

For the reasons discussed below, none of these arguments presents a close question and the motions to dismiss are **DENIED**.

## II.

## DISCUSSION

### A. THE LEGAL STANDARD

#### 1. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Under the familiar standard, a court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Fed.R.Civ.P. 12(b)(6). Thus, dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988). The Court accepts all factual allegations pleaded in the complaint as true; in addition, it construes those facts and draws all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996).

#### 2. MOTION TO STRIKE

■ Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f); *Sidney–Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir.1983). Under this Rule, courts have authority to strike a prayer for relief seeking damages that are not recoverable as a matter of law. *See Tapley v. Lockwood Green Engineers, Inc.,* 502 F.2d 559, 560 (8th Cir.1974).

### B. OVERVIEW OF THE FACTA

Arcilla alleges that Adidas willfully violated a FACTA provision that provides:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. § 1681c(g). Congress enacted this provision in 2003, Pub.L. No. 108–159,

117 Stat.1952, and provided that it would take effect in two phases. With respect to cash registers installed on or after January 1, 2005, compliance was required immediately, while registers in use before that date were required to comply beginning on December 4, 2006. *See* 15 U.S.C. § 1681c(g)(3).

The FACTA, including § 1681c(g), is part of a broader statutory scheme known as the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.* The FCRA creates a private right of action through a provision that provides:

> Any person who ***willfully*** fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable ***to that consumer*** in an amount equal to the sum of-
>
> (1)(A) any actual damages sustained by the consumer as a result of the failure *or* damages of not less than $100 and not more than $1,000; or
>
> (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
>
> (2) such amount of punitive damages as the court may allow; and
>
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n (emphases added); *see also id.* § 1681o (providing civil liability for

negligent noncompliance, but only for consumers' actual damages); *Nelson v. Chase Manhattan Mortgage Corp.,* 282 F.3d 1057, 1059 (9th Cir.2002) ("with these words Congress created a private right of action for consumers"). Thus, because Arcilla and the putative class claim to be "consumers," they assert a claim arising under the FRCA and thus properly invoke this Court's subject matter jurisdiction. *See* 28 U.S.C. § 1331; 15 U.S.C. § 1681p (providing that "[a]n action to enforce any liability created under this subchapter may be brought in any appropriate United States district court").[1]

## C. ANALYSIS

### 1. MOTION TO DISMISS

#### a. Adidas' Vagueness Arguments Fail

Adidas' first argument for dismissal is that it could not have willfully violated § 1681c(g) because the statute is vague and ambiguous. (Mot. at 3.) Though Adidas does not separately delineate them, this argument actually rests on two independent theories. First, Adidas contends that the wording of the statute is unconstitutionally vague and would thus violate Adidas' right to due process if liability were imposed. (Mot. at 4.) Second, and less explicitly, Adidas suggests that its competing interpretations of § 1681c(g) mean that, as a matter of law, it could not have possessed the requisite intent in printing receipts to rise to the level of "willfulness." (*See id.*) Each argument fails.

---

**1.** Adidas has not questioned the existence of a private right of action. Nonetheless, the Court raises the issue because it is a threshold to the existence of subject matter jurisdiction. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The Court easily concludes such a right exists, and other

courts have uniformly agreed. *Leowardy v. Oakley, Inc.,* No. SACV 07–53 CJC, 2007 WL 1113984, *2 (C.D.Cal. Apr.10, 2007); *Eskandari v. IKEA U.S., Inc.,* No. SACV 06–1248 JVS, 2007 WL 845948, *2 (C.D.Cal. Mar.12, 2007); *Aeschbacher v. Cal. Pizza Kitchen,* No. CV 07–215 VBF, 2007 WL 1500853 (C.D.Cal. Apr. 3, 2007).

### i. The Statute is Not Unconstitutionally Vague

■ "The void-for-vagueness doctrine reflects the principle that a statute which either forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 629, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) (citation, internal quotation marks, and alteration omitted). However, the requirement that a statute possess a "reasonable" degree of clarity does not demand exacting precision, nor does it require Congress to use the clearest conceivable language in every enactment. "The fact that Congress might, without difficulty, have chosen clearer and more precise language equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague." *United States v. Powell*, 423 U.S. 87, 94, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975).

■ Moreover, as the Supreme Court has emphasized, "economic regulation is subject to a less strict vagueness test [than criminal statutes] because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (footnote omitted); *see also Big Bear Super Market No. 3 v. INS*, 913 F.2d 754, 757 (9th Cir.1990) ("when the statute regulates the conduct of businesses ... the vagueness test is relaxed, because businesses have a greater ability to determine the meaning of legislation in advance of their conduct than do individuals"). Thus, the question here is essentially whether § 1681c(g) is sufficiently clear that its prohibitions would be understood by an ordinary person operating a profit-driven business.

Section 1681c(g) easily meets this standard because its words have only one reasonable meaning. "No person ... shall print more than the last 5 digits of the card number or the expiration date upon any receipt" clearly means that (1) no person shall print more than the last 5 digits of the card number, and (2) no person shall print the expiration date. In other words, a retailer must print no more than 5 digits of a card number, and also must omit the expiration date—doing either violates the statute.

Adidas attempts to obfuscate this plain meaning by advancing two "competing" interpretations that border on the absurd. First, Adidas contends that the statute could be read to "allow a business to print the credit card's expiration date on the receipt so long as no more than the last 5 digits of the card appear." (Mot. at 4.) Second, Adidas argues it could be read so that the phrase "last 5 digits" modifies both "card number" and "expiration date," and thus that a business would be in compliance so long as it truncated the card number and printed only the last five digits of the expiration date. (Mot. at 4–5.) Each interpretation is bizarre. The first ignores the plain reference to "the expiration date," essentially by contending that Congress prohibited only printing *both* an untruncated card number and an expiration date on the same receipt. As Arcilla notes, this would lead to the absurd result that a firm could print an *entire card number* so long as it omitted the expiration date. No reasonable person would think that this was Congress' intent.

The second interpretation seems more colorable initially, but becomes unreasonable when one considers the normal pres-

entation of dates on credit cards. To read the "last 5 digits" as modifying "the expiration date," a firm would have to believe that the statute was unconcerned with dates expressed in the "MM/YY" format. In other words, if the statute allowed the printing of up to five digits of a date, it would require no truncation at all for four-digit dates, which could be printed in their entirety. And even if the date were in the six digit MM/DD/YY or MM/YYYY format, the truncation requirement would be toothless because it would allow a retailer to print all but the first digit, which contains the smallest amount of identifying information of the six because it is always a "0" or a "1." Although Adidas is correct that the truncation requirement would have more effect on dates in the MM/DD/YYYY format (Reply at 4), it offers no evidence or argument that credit cards use this format with such frequency that it would be reasonable for anyone to believe Congress intended to require truncation of this format alone.

Equally unhelpful are Adidas' citations to materials such as unenacted versions of § 1681c(g) and Washington state's identity theft statutes, which arguably use even more clarity to reach the same result. (Mot. at 5; Reply at 3.) Adidas cites no authority for the proposition that Congress must use language that eliminates all doubt whatsoever about a statute's meaning, and it cannot. As noted above, the test is whether a *reasonable person* subject to the statute would comprehend it. *Roberts,* 468 U.S. at 629, 104 S.Ct. 3244; *Village of Hoffman Estates,* 455 U.S. at 498, 102 S.Ct. 1186. That other statutes used arguably clearer language is irrelevant to this inquiry.

Also irrelevant are President Bush's signing statement, Senate reports, and various commentaries that, as Adidas

notes, each mention only the requirement that card numbers be truncated. (Mot. at 5–6; Reply at 4–6.) Any focus on the card number in commentaries does not make Congress' clear reference to expiration dates ambiguous—it merely shows that these materials focused on a different aspect of § 1681c(g). To be clear, Adidas has not contended that the plain meaning of the statute leads to absurd results, or that the Court should *actually adopt* one of its competing interpretations as more consistent with Congress' true intent—it only, advances a vagueness argument.[2] Thus, the legislative materials it offers are essentially irrelevant since they do not in any way conflict with a straightforward interpretation of the statute.

Accordingly, the Court rejects Adidas' due process challenge and holds that § 1681c(g) is not unconstitutionally vague. Other courts to consider the issue have uniformly agreed. *Pirian v. In–N–Out Burgers,* No. SACV 06–1251 DOC, 2007 WL 1040864, *3 (C.D.Cal. Apr.5, 2007); *Aeschbacher,* No. CV 07–215 VBF, at 5.

### ii. Adidas' Conduct is Properly Alleged to be "Willfull"

 The implicit second aspect of Adidas' "could not have willfully violated an ambiguous statute" argument is that even if § 1681c(g) is not unconstitutionally vague, it is still vague enough that, as a matter of law, any conduct violating it cannot have been "willful." (*See* Mot. at 4, 6.) At least, this is the only way to read Adidas' brief; it is the only reason Adidas would cite a specific-intent criminal case, *United States v. Critzer,* 498 F.2d 1160 (4th Cir.1974), which noted that "when the law is vague or highly debatable, a defendant, actually or imputedly, lacks the requisite intent to violate it" and a qualified

---

**2.** Indeed, any such argument would be unavailing because Arcilla offers class allegations

that would suffice under either of Adidas' alternative interpretations. (*See* Compl. ¶ 20.)

immunity case, *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), which noted that a right must be "clearly established" in order to impose liability in an action under 42 U.S.C. § 1983. To the extent this is Adidas' contention, it fails for two reasons. First, in the Ninth Circuit, the term "willfully" as used in the FCRA means "either knowing that policy [or action] to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy [or action] contravened those rights." *Reynolds v. Hartford Financial Services Grp.*, 435 F.3d 1081, 1098 (9th Cir.2006) (quoting *Cushman v. Trans Union Corp.*, 115 F.3d 220, 227 (3d Cir.1997)). While the Supreme Court has granted certiorari on this issue, *see Spano v. Safeco Corp.*, 140 Fed.Appx. 746 (9th Cir.2005), *cert. granted* —— U.S. ——, 127 S.Ct. 36, 165 L.Ed.2d 1014 (2006), *Reynolds* remains the law in the Ninth Circuit and defeats Adidas' attempt to rely on cases analyzing more stringent intent requirements. Thus, because Adidas allegedly was reckless with disregard to consumers' FCRA rights (Compl.¶ 11), it cannot be said that as a matter of law Adidas did not act "willfully."

Indeed, even if the Supreme Court were to overturn *Reynolds* and hold that FCRA willfulness requires specific intent, the allegation of a knowing violation (*id.*) would suffice at this stage because, as discussed above, § 1681c(g) can reasonably be interpreted in only one way.

Thus, the Court rejects this aspect of Adidas' argument.

### b. The Prayer for Statutory Damages Does Not Defeat the Claim

■ Adidas next argues that the requested statutory damages of $100 to $1000 per violation would be grossly excessive and thus violate due process since "the proposed plaintiff class has suffered no actual damages." (Mot. at 6.) This argument fails on a variety of levels. First, it is misleading because although the Complaint does not allege **actual pecuniary damages**, it does allege **actual harm**: Arcilla contends that he and the proposed class have been subjected to an increased risk of identity theft and thereby suffered an "actual loss" that is "small and hard to quantify" (which is why Arcilla elects to pursue only statutory damages). (*See* Compl. ¶¶ 11, 23.) The Complaint also suggests that some class members may have suffered substantial actual loss due to identify theft, and notes that such members may wish to opt out of the class if their damages exceed the statutory amount. (*See id.*) So, Adidas' argument rests on a flawed premise because Arcilla does allege actual harm.

■ Second, even in light of the minimal nature of actual harm alleged, this case does not—as presently constituted— present due process concerns. A statutory penalty violates due process only where it is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, Iron Mt. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66–67, 40 S.Ct. 71, 64 L.Ed. 139 (1919); *see also Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir.2003); *cf. State Farm Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416–17, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) (punitive damage awards must not be grossly excessive); *BMW v. Gore*, 517 U.S. 559, 580–81, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) (same). Here, at the level of a single violation, it is not at all excessive to award even the maximum statutory damages, even to a plaintiff who had suffered no pecuniary damages. *Cf. Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp. 1162, 1167 (S.D.Ind.1997) ($500 penalty under Telephone Consumer Protection Act not excessive); *Texas v. American Blastfax, Inc.*, 121 F.Supp.2d 1085, 1090 (W.D.Tex.2000) (following *Kenro* ).

Of course, Adidas does not contend a $1000 fine would be grossly excessive. Rather, it raises the specter of the tens of thousands of $1000 fines that could be imposed if the putative class is certified and eventually recovers the statutory maximum. (*See* Mot. at 7.) This concern is understandable, but it is premature, and would be appropriate *at the earliest* in opposition to an eventual class certification motion, which is when Adidas' cited authorities addressed it. *See Ratner v. Chem. Bank N.Y. Trust Co.*, 54 F.R.D. 412 (S.D.N.Y.1972); *Kline v. Coldwell Banker & Co.*, 508 F.2d 226, 234–35 (9th Cir.1974); *Anderson v. Capital One Bank*, 224 F.R.D. 444, 453 (W.D.Wisc.2004). Indeed, Adidas has cited no case where a complaint has been dismissed for failure to state a claim merely because it requested damages in an amount that might hypothetically be excessive. *Cf.* William W. Schwarzer, et al., *California Practice Guide: Federal Civil Procedure Before Trial* § 9:230, at 9–72 (2007 ed.) ("A Rule 12(b)(6) motion will not be granted merely because plaintiff requests a remedy to which he or she is not entitled." (citation, internal quotation marks, and alteration omitted)). Thus, though Adidas need not necessarily "wait until a verdict" (Reply at 9) before its due process concerns come into play, it must proceed past the pleading stage.[3]

Accordingly, the statutory damages prayer does not defeat Arcilla's claim.

### 3. "General Principles of Tort Law" Do Not Defeat Arcilla's Claim

 Adidas next contends that Arcilla's request for statutory damages is impermissible because, without an accompanying allegation of action harm, it violates "general principles of tort law." (Mot. at 7–9.) As with the argument above, this concern is premature, but in this case it will likely never gestate because it rests on a premise that is fatally flawed. As Arcilla concisely states, "[c]ommon law rules do not apply to statutory enactments that depart from common law principles." (Opp. at 10.) And contrary to Adidas' contention (Mot. at 8), the Supreme Court did not hold otherwise in *Doe v. Chao*, 540 U.S. 614, 621, 124 S.Ct. 1204, 157 L.Ed.2d 1122 (2004). There, the Court considered a claim for statutory damages under the Privacy Act, which provides:

> In any suit ... in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of ... actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000 ....

5 U.S.C. § 552a(g)(4). Based on a "straightforward textual analysis," the Court noted that "[w]hen the statute gets to the point of guaranteeing the $1,000 minimum, it not only has confined any eligibility to victims of adverse effects caused by intentional or willful actions, but has provided expressly for liability to such victims for 'actual damages sustained.'" *Doe*, 540 U.S. at 620, 124 S.Ct. 1204. Thus, statutory damages required actual damages, but only because of the text of the statute itself. *Id.* at 627, 124 S.Ct.

---

**3.** The only authority to the contrary is easily distinguished. *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 211–12 (9th Cir.1975) (affirming dismissal of class action for lack of superiority at pleading stage because parallel state proceeding had been initiated by state officials and resulted in "[s]ignificant relief"); *see also Bateman v. Discovery Commc'ns*, CV 07–147 PSG (C.D.Cal. May 2, 2003) (rejecting FACTA defendant's attempt to rely on Kamm for dismissal at pleading stage).

1204. At no point did the Court look to "general principles of tort law" for anything but guidance as to Congress' intent. *See id.* at 621–22, 124 S.Ct. 1204.

But resort to such an amorphous source is unnecessary here because Congress' intent appears in the plain language of the statute. In contrast to the Privacy Act, the FCRA clearly provides for statutory damages even without actual damages:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of-
>
> (1)(A) any actual damages sustained by the consumer as a result of the failure *or* damages of not less than $100 and not more than $1,000 . . . .

15 U.S.C. § 1681n (emphasis added). Thus, the only conceivable interpretation is that a consumer whose FCRA rights have been violated may elect either actual or statutory damages, with no requirement of having to present evidence of actual harm.

Adidas contends this is an absurd result that Congress could not have intended (Mot. at 9; Reply at 8), but it is wrong. The policies of deterrence and compensation that motivated FACTA and FCRA as a whole make it reasonable to believe that Congress intended to impose damages even when the plaintiff cannot offer evidence of pecuniary loss, which might often be difficult to obtain.

Accordingly, the Court rejects Adidas' final argument for dismissal.

### 2. MOTION TO STRIKE

■ The sole basis for Adidas' motion to strike is that the lack of an allegation of actual harm means that any amount of punitive damages would violate due process under the *State Farm / BMW* guideposts. (Mot. at 9–10.) Yet again, the Court disagrees. Once again, this argument incorrectly assumes that the Com-

plaint does not allege actual harm. As explained above, the Complaint merely disclaims actual *damages* as too difficult to prove, and alleges *harm* in the form of increased risk of identity theft. (Compl.¶ 23.) Moreover, the argument is once again premature, as Adidas cites no case that has stricken a claim for punitive damages at the pleading stage based on *State Farm / BMW*. And as if one more reason to deny the motion were necessary, Adidas also misapplies the guideposts, which are:

> [1] the degree of reprehensibility of the [defendant's conduct]; [2] the disparity between the harm or potential harm suffered by [the plaintiff] and his punitive damages award; and [3] the difference between this remedy and the civil penalties authorized or imposed in comparable cases.

*BMW,* 517 U.S. at 576, 116 S.Ct. 1589. Because no comparable FACTA cases yet exist, only the first and second guideposts are relevant. As to the first, Adidas is incorrect when it argues its conduct was not reprehensible as a matter of law. Though Adidas calls its conduct a mere "technical violation" (Mot. at 10), this characterization ignores the allegation that it "repeatedly and systematically" printed prohibited information and that it knew that its receipt printing violated consumers' FACTA rights. (Compl.¶¶ 11, 20.) Given that Congress provided for punitive damages for just such conduct, it would be difficult to conclude that, as a matter of law, it was not "reprehensible" at all.

Second, Adidas' insistence on claiming that the Complaint alleges no actual harm ignores the fact that the second guidepost allows for consideration of *potential* harm. Because identity theft carries substantial risks, it seems likely that increasing a consumer's exposure would constitute a palpable imposition of potential harm that

could support at least some award of punitive damages.

Thus, the Court cannot hold that punitive damages are beyond all possibility.

## IV.

## CONCLUSION

For the foregoing reasons, the motions to dismiss and strike are **DENIED.** The hearing on this matter, currently scheduled for Monday, May 7, 2007, is hereby **VACATED.** Fed.R.Civ.P. 78; Local Rule 7–15.

IT IS SO ORDERED.