**Lety RAMIREZ, for herself and other members of the general public similarly situated, Plaintiff,**

v.

**MGM MIRAGE, INC., Defendant.**

**No. 2:07CV–00326–PMP–PAL.**

United States District Court, D. Nevada.

Dec. 3, 2007.

Farris Ain, Greg K. Hafif, Charles E. Hill, Herbert Hafif, Michael G. Dawson, Miguel G. Caballero, Law Offices of Herbert Hafif, Claremont, CA, Robert S. Ackley, Law Offices of Herbert Hafif, Los Angeles, CA, Randal D. Shimon, Corrine L. Neuffer, Shimon & Lovaas, A P.C., Las Vegas, NV, for Plaintiff.

Christopher Ritter, James Schreier, Patricia Glaser, Christensen, Glaser, Fink, Jacobs, Weil & Shapiro LLP, Los Angeles, CA, Patrick G. Byrne, Richard Gordon, Snell & Wilmer, Las Vegas, NV, for Defendant.

## ORDER

PHILIP M. PRO, District Judge.

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. # 19), filed on August 10, 2007. Plaintiff filed an Opposition (Doc. # 24) on August 28, 2007. Defendant filed a Reply (Doc. # 25) on September 11, 2007.

Also before the Court is Defendant's Motion to Strike Portions of Plaintiff Lety Ramirez's Complaint (Doc. # 20), filed on August 10, 2007. Plaintiff filed an Opposition (Doc. # 23) on August 28, 2007. Defendant filed a Reply (Doc. # 25) on September 11, 2007.

## I. BACKGROUND

This Complaint is a purported class action brought pursuant to the Fair and Accurate Credit Transaction Act ("FACTA"), which prohibits persons engaged in a credit card transaction from electronically printing on the receipt more than the last five numbers of the credit card number or the expiration date. (Compl.[Doc.# 1].) Plaintiff alleges that on or after December 4, 2004, Defendant provided Plaintiff with an electronically printed receipt containing more than the last five digits of Plaintiff's credit or debit card and/or printed the credit or debit card's expiration date. (*Id.* at 8–9.) Plaintiff alleges that despite having three years to come into compliance, and despite being informed repeatedly of the law's requirements, Defendant MGM Mirage, Inc. willfully violated the statute by continuing to print more than the last five digits of the credit card number and/or the expiration date on credit card receipts. (*Id.* at 9–10.) Plaintiff seeks statutory

damages, punitive damages, attorneys' fees, and injunctive relief. (*Id.* at 11–12.)

Defendant moves to dismiss the Complaint, arguing the only injury Plaintiff alleges is an increased risk of identity theft, which is not a cognizable injury. Defendant argues that because Plaintiff has not alleged a cognizable injury, Plaintiff lacks Article III standing. Defendant also argues Plaintiff is not entitled to statutory or punitive damages because she has not suffered any actual damages, and awarding punitive damages in this case would violate due process. Defendant further contends Plaintiff's allegations of "willfulness" are conclusory, and, in any event, Defendant could not willfully violate the statute because the statute is vague and ambiguous.

Plaintiff responds that FACTA specifically permits recovery of statutory damages without a showing of actual harm, and other courts have so found. Plaintiff also argues due process principles do not require actual damages to support punitive damages. Plaintiff contends the case on which Defendant relies refers to excessive punitive damages, not whether Plaintiff may recovery any punitive damages at all. With respect to willfulness, Plaintiff argues it sufficiently pled willfulness because under Federal Rule of Civil Procedure 9(b), Plaintiff may plead willfulness generally. With respect to Defendant's ambiguity argument, Plaintiff responds that the statute is clear.

Defendant also moves to strike Plaintiff's request for injunctive relief, arguing only the Government may obtain injunctive relief under the statute. Defendant moves to strike Plaintiff's request for statutory and punitive damages because Plaintiff has not alleged a cognizable injury. This argument repeats the argument made in the motion to dismiss. Plaintiff responds that courts are divided over whether a consumer may pursue injunctive relief. Plaintiff argues injunctive relief lies within the Court's inherent power and Congress's silence on the issue does not deprive the Court of this power.

## II. MOTION TO DISMISS

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir.1998) (citation omitted). However, the Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir.1994). There is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997) (citation omitted). The issue is not whether the plaintiff ultimately will prevail, but whether she may offer evidence in support of her claims. *See id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atlantic Corp. v. Twombly*, —— U.S. ——, ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Such allegations must amount to "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 1964–65.

### A. Standing

■ Defendant argues Plaintiff has alleged as her harm an increased risk of identity theft. Defendant argues this is not an injury in fact and therefore is not legally cognizable. Defendant cites recent cases in which other courts have found an increased risk of identity theft is not suffi-

cient to confer Article III standing, although these cases did not involve FACTA claims. Plaintiff responds that FACTA permits her to assert a claim even if she suffers no actual damages. Defendant replies that even if the statute would permit such a result, the Constitution's standing requirement does not. Defendant argues the statutory penalty does not relieve a plaintiff from establishing she suffered an injury in fact.

■■■ To satisfy Article III standing requirements, a plaintiff must show that: (1) plaintiff has suffered an " 'injury in fact' that is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Earth Island Institute v. Ruthenbeck,* 490 F.3d 687, 693 (9th Cir.2007) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). Article III standing may exist "solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 578, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citing *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Where Congress creates a legally protected interest through a statute, the plaintiff still must show he or she suffered an injury to meet Article III standing. *Id.*

FACTA, which is part of the Fair Credit Report Act ("FCRA"), provides as follows:

(1) In general

Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

(2) Limitation

This subsection shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.

(3) Effective date

This subsection shall become effective—

(A) 3 years after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is in use before January 1, 2005; and

(B) 1 year after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is first put into use on or after January 1, 2005.

15 U.S.C. § 1681c(g). Private citizens may sue for either negligent or willful FACTA violations. 15 U.S.C. § 1681*o* (negligent); 15 U.S.C. § 1681n (willful). For a negligent violation, the plaintiff is entitled to recover any actual damages plus costs of suit and reasonable attorney's fees. 15 U.S.C. § 1681*o*(a). For a willful violation, the plaintiff is entitled to recover "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000," plus costs of suit and reasonable attorney's fees. 15 U.S.C. § 1681n(a)(1)(A), (a)(3). Additionally, a plaintiff may recover punitive damages for a willful violation. 15 U.S.C. § 1681n(a)(2).

Neither the United States Court of Appeals for the Ninth Circuit nor the United States Supreme Court directly have ad-

dressed this issue. However, the Supreme Court recently dealt with a case involving § 1681n's willful provision where the plaintiff did not allege actual harm and sought only statutory damages. *See Safeco Ins. Co. of Am. v. Burr,* —— U.S. ——, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007). In *Safeco,* the Supreme Court specifically noted that the plaintiff "claimed no actual harm, but sought statutory and punitive damages under § 1681n(a)." *Id.* at 2207. The Supreme Court gave no indication that although the plaintiff alleged no actual harm, he lacked standing to sue for statutory damages. Even if the parties did not raise the standing issue, the Supreme Court has an independent obligation to examine its own jurisdiction. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 230, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Having specifically noted the plaintiff did not allege actual harm, the Supreme Court did not indicate this posed a possible standing problem in *Safeco.*

The United States Court of Appeals for the Seventh Circuit likewise did not indicate any standing problem for a plaintiff who sought to represent a class of consumers alleging statutory damages rather than compensatory damages. *Murray v. GMAC Mortg. Corp.,* 434 F.3d 948, 951, 952–53 (7th Cir.2006). The Seventh Circuit noted that Congress enacts laws like the FCRA and provides for modest statutory damages where the consumer's actual loss is small and difficult to quantify. *Id.* The Seventh Circuit very recently reiterated its view that "the FCRA contemplates possible awards of statutory damages where the violation is willful, *see* 15 U.S.C. § 1681n(a)(1)(A), ... [t]hus, actual damages are not necessarily a precondition for suit." *Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614, 622 (7th Cir.2007).

Every district court to consider the issue has found a plaintiff has standing to pursue a FACTA claim for statutory dam-

ages even without showing actual damages. *See, e.g., Korman v. Walking Co.,* 503 F.Supp.2d 755, 759 (E.D.Pa.2007) ("When one is handed a receipt that does not omit the offending information, one suffers an injury ... sufficient to confer standing."); *Ehrheart v. Lifetime Brands, Inc.,* 498 F.Supp.2d 753, 755 (E.D.Pa.2007) ("The Complaint alleges that Defendant gave Ehrheart a receipt, or receipts, which violated FACTA by printing more than the last five digits of her credit card or debit card number and/or printed the expiration date of her credit card. That is an injury under FACTA."); *Cf. Arcilla v. Adidas Promotional Retail Operations, Inc.,* 488 F.Supp.2d 965, 972 (C.D.Cal.2007) (rejecting argument that the requested statutory damages would be grossly excessive where plaintiff suffered no actual damages because defendant printing a receipt with plaintiff's information which statutorily should have been omitted is actual harm even if plaintiff cannot show actual damages).

The Court agrees with every other court to address the issue directly and indirectly. Through FACTA, Congress created the legal right to electronically printed receipts that truncate the consumer's credit card number and which do not print the expiration date of the consumer's credit card. Receiving a receipt that does not omit the offending information constitutes an invasion of this legally protected right resulting in an injury sufficient to confer standing under Article III. The Court therefore will deny Defendant's motion to dismiss for lack of standing.

**B. Due Process**

█ Defendant argues Plaintiff seeks millions in statutory and punitive damages but with no actual damages, any such award would be an arbitrary and excessive punishment in violation of Defendant's due

process rights. Plaintiff argues it is premature to dismiss her claim based on the alleged excessiveness of punitive damages because until damages are determined, it cannot be known whether punitive damages are excessive.

■ The Fourteenth Amendment's Due Process Clause prohibits imposing "grossly excessive or arbitrary punishments on a tortfeasor." *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 416, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). To determine whether a punitive damages award is excessive, a reviewing court must consider: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.* at 418, 123 S.Ct. 1513.

Defendant's motion to strike punitive damages is premature. The Court cannot determine at the motion to dismiss stage whether a punitive damages award is excessive. The cases upon which Defendant relies all arise in the context of courts denying class certification. *See Kline v. Coldwell, Banker & Co.,* 508 F.2d 226, 234–35 (9th Cir.1974) (finding class litigation not superior where class would involve 400,000 to 800,000 transactions with trebled aggregate damages of $750 million and where each defendant would be jointly and severally liable for entire damages amount); *Legge v. Nextel Commc'ns, Inc.,* 2004 WL 5235587, *14–15 (C.D.Cal. June 25, 2004) (unpublished) (same for $9 per plaintiff for a class of 1.5 million); *Ratner v. Chem. Bank New York Trust Co.,* 54 F.R.D. 412, 416 (S.D.N.Y.1972) (same for $100 statutory claim for 130,000 proposed class members); *Anderson v. Capital One Bank,* 224 F.R.D. 444, 452–53 (W.D.Wis. 2004) (same for $100 to $1000 statutory

award for class of 19, 840). In those cases, the plaintiff sought to certify a class based on statutory damage claims plus punitive damages where class members had suffered no actual harm. Because of the large aggregate number of claims, the potential recovery of statutory damages plus punitive damages far exceeded the alleged harm where each class member suffered no actual damages. The courts thus concluded class adjudication was not superior to individual adjudication of each case.

At this juncture, the only punitive damage claim pending before the Court is Plaintiff's individual claim. Unless and until an actual punitive damage award is entered in Plaintiff's case, no basis exists for this Court to determine such an award is excessive. Although Defendant argues any punitive damages award would be excessive because Plaintiff suffered no actual harm, FACTA contemplates punitive damages even where the plaintiff seeks only statutory damages. Further, until Plaintiff moves for class certification, the Court cannot consider whether the size of the class combined with the size of the statutory award and punitive damages in comparison with the lack of actual harm renders class treatment inferior to individualized treatment under Federal Rule of Civil Procedure 23. The Court therefore will deny Defendant's motion to dismiss on this basis without prejudice to raise this argument if Plaintiff moves for class certification and/or if Plaintiff prevails on the merits and is awarded punitive damages.

## C. Willfulness

■ Defendant argues the Complaint does not sufficiently allege willfulness because Plaintiff's allegations show, at most, negligent failure to follow the statute. Plaintiff responds that Federal Rule of Civil Procedure 9(b) does not require her to allege willfulness with particularity and

she sufficiently has alleged willfulness by making allegations about what Defendant knew about its obligations under FACTA and its failure to comply.

█ A willful violation under the FCRA includes "not only knowing violations of a standard, but reckless ones as well." *Safeco,* 127 S.Ct. at 2208. A defendant acts in reckless disregard if the defendant's action "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 2215. In other words, the defendant must have taken action involving "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* (quotation omitted).

Here, Plaintiff alleges FACTA gave merchants who accept credit cards up to three years to comply with its requirements. (Compl. [Doc. # 1] at 9.) Plaintiff alleges that despite having three years to comply, Defendant "willfully" violated the law. (*Id.* at 2.) Plaintiff asserts as factual evidence of willfulness that several years ago, VISA, MasterCard, Discover, American Express, and JCB, informed Defendant about FACTA and its requirements. (*Id.* at 9–10.) According to the Complaint, these companies implemented policies requiring Defendant to truncate credit card numbers and not print the expiration date on receipts. (*Id.* at 10.) The Complaint alleges VISA's CEO held a press conference in March 2003 announcing VISA's new truncation policy to protect consumers from identity theft. (*Id.*) According to the Complaint, Defendant's business peers and competitors complied with FACTA and Defendant readily could have complied as well. (*Id.*) Plaintiff thus alleges that despite knowing and repeatedly being informed about FACTA's requirements and its importance in protecting consumers

from identity theft, and despite having three years to comply, Defendant willfully violated the statute. (*Id.*)

Taking the alleged facts as true, Plaintiff's allegations plausibly support willfulness at this stage of the proceedings. Plaintiff has alleged Defendant was or should have been aware of FACTA's requirements and the importance of protecting consumers from identity theft, but by continuing to print the information FACTA requires to be omitted from receipts, Defendant took an act involving an unjustifiably high risk of harm to the consumer. Other courts have rejected similar arguments made by defendants challenging similar language in a plaintiff's complaint. *See Lopez v. Gymboree Corp.,* No. C 07–0087 SI, Slip Copy, 2007 WL 1690886, *2 (N.D.Cal.2007); *Follman v. Hospitality Plus of Carpentersville, Inc.,* No. 07 C 2934, Slip Copy, 2007 WL 3052962, *2 (N.D.Ill.2007); *Iosello v. Leiblys, Inc.,* 502 F.Supp.2d 782, 784–85 (N.D.Ill.2007). The Court therefore will deny Defendant's motion to dismiss on this basis.

### D. Vague and Ambiguous Statute

Finally, Defendant argues it could not willfully violate a vague and ambiguous statute. Defendant contends FACTA is vague and ambiguous because its effective date provision refers to any "cash register or other machine or device that electronically prints receipts" for credit card transactions. Defendant claims the term "other machine or device" is ambiguous because it is unclear from the statutory language whether the effective date turns on the date the cash register is put to use or the computer software is first put to use. Defendant also argues FACTA is ambiguous as to whether businesses must truncate card numbers, expiration dates, or both.

Plaintiff claims the statute is clear and unambiguous on its face and refers to "any" cash register or other device. Addi-

tionally, Plaintiff argues it is the machine's ability to print the prohibited information that is at issue, not the software or other components. As to the "last five digits" part of the statute, Plaintiff argues Defendant's reading is tortured because most credit cards use only four numbers for expiration dates. Consequently, the last five digits modifies only the credit card number. Plaintiff argues the plain reading and common sense dictate the statute prohibits a business from printing the expiration date or the last five digits of the number.

If a defendant's interpretation of a statute is not objectively unreasonable, even if erroneous, the defendant has not taken action involving an unjustifiably high risk of harm, and therefore the defendant's conduct is not willful. *Safeco*, 127 S.Ct. at 2215. Contrary guidance from the courts of appeals or a relevant agency may impact whether a defendant's interpretation is objectively unreasonable. *Id.* at 2216.

### 1. Truncating the credit card number and expiration date

 Courts uniformly have rejected Defendant's argument on this point, and all courts reviewing the statute have found it unambiguous. This Court agrees and adopts the reasoning as set forth in *Follman:*

> Defendant argues that the language of the statute renders it amenable to three different interpretations and thus is sufficiently vague as to render defendant's conduct not a willful violation. Defendant asserts three possible interpretations:
>
> (1) no person shall print: (a) more than the last five digits of the card number on the receipt; or (b) the expiration date on the receipt;
>
> (2) no person shall print: (a) more than the last five digits of the card number on the receipt; and (b) more than the last five digits of the expiration date on the receipt;
>
> (3) no person shall print: (a) more than the last five digits of the card number on the receipt; and (b) the expiration date on the receipt.
>
> None is plausible. The first would permit a merchant to include the entire card number on the receipt, so long as the expiration date was left off. Congress's intent in enacting FACTA to prevent identity theft would not be realized by such a reading. The second interpretation is equally implausible[.] The majority of expiration dates are only four digits long, while others are six or at most eight digits, e.g. MM/YY, MM/YYYY, MM/DD/YY or MM/DD/YYYY. This interpretation would permit the 4–digit expiration dates to be printed in their entirety, and the six digit expiration dates to only be missing the first number, which can only be either a zero or a one. Even the eight digit expiration dates would only be missing the month of expiration (of which there are twelve) and the first digit of the day of expiration, which could only be a zero, one, two or three. A would-be identity thief could easily use the printed information to discern the entire expiration date. The third interpretation may appear conceivable on its face, but becomes untenable upon a re-reading of the statute itself. The connection word between the two elements is "or" not "and[.]" As used in this statute, the word "or" delineates the two things that cannot be printed-no person shall print more than the last five digits of the card number or the expiration date-meaning a person may print neither. We find that no reasonable person could interpret the statute in the ways defendant presents. The plain meaning of the statute is that no merchant may print more than the last

five digits of the card number, nor may they print the expiration date of the card on the receipt.

Our interpretation of the statute is bolstered by the similar interpretations every other court to consider the issue has held the same (see collection of cases supra). Furthermore, the FTC-issued rules governing interpretation of the statute have rejected these alternate readings. *See* Bureau of Consumer Protection, Federal Trade Commission, Slip Showing? Federal Law Requires Alt Businesses to Truncate Credit Card Information on Receipts (May 2007). While we understand that defendant here, as in *Safeco,* did not have the benefit of the FTC guidance, nor of the holdings of myriad other district courts, we find that, unlike in *Safeco,* the text of this statute is clear and open to only one reasonable interpretation, thus a "dearth of guidance" does not render defendant's readings plausible.

*Follman,* No. 07 C 2934, Slip Copy, 2007 WL 3052962, *3 (internal citation and footnote omitted). Legislative history supports this conclusion, as the House Report on FACTA indicated the Act prohibited "companies that accept credit or debit cards from printing expiration dates or more than the last 5 digits of a card number on any electronically printed receipt provided to the cardholder at the point of sale or transaction, with certain exceptions." H.R.Rep. No. 108–263, 41, 2003 WL 22064665 (Sep. 9, 2003). The Court therefore will deny Defendant's motion to dismiss on this basis.

2. *To what machines or devices does FACTA apply*

■ Defendant argues FACTA's effective date provision is vague because it refers to any "cash register or other machine or device that electronically prints receipts" for credit card transactions. Defendant claims the term "other machine or

device" is ambiguous because it is unclear from the statutory language whether the effective date turns on the date the cash register is put to use or whether it is when the computer software that controls what numbers are printed on a receipt is first put to use. Defendant argues that, for example, it is unclear what effective date would control if Defendant used a particular cash register before January 1, 2005 but then added new receipt-generating software after January 1, 2005. Plaintiff contends the language is unambiguous and refers to the machine or device's printing capability. Thus, if the cash register, machine, or device prints receipts before January 1, 2005, FACTA applies in December 2006. If it does not gain printing capability until after January 1, 2005, then the December 2004 effective date applies.

FACTA's effective date provision states the Act goes into effect:

(A) 3 years after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is in use before January 1, 2005; and

(B) 1 year after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is first put into use on or after January 1, 2005.

15 U.S.C. § 1681c(g)(3). The parties do not cite, and the Court could not locate, any other court that has addressed this alleged ambiguity.

The Court concludes the statute is unambiguous. The statute refers to a cash register or other machine or device that electronically prints receipts. If the machine or device does not electronically print receipts by January 1, 2005, the December 2006 effective date applies. If the company adds software or some other de-

vice by which a particular cash register or other machine or device first begins to electronically print receipts after January 1, 2005, the December 2004 effective date would apply. The key factor that determines which effective date applies is whether the device electronically prints the receipt which may contain the protected information about which Congress was concerned.

Congress gave companies time to either phase out or bring up to date older machines that businesses already were using. *See* H.R.Rep. No. 108–263, 41, 2003 WL 22064665 (Sep. 9, 2003) ("These effective dates are designed to allow merchants to make an orderly transition to meet the requirements imposed by this section."); Sen. Rep. No. 108–166, 13, 2003 WL 22399643 (Oct. 17, 2003) ("The phase in periods are designed to give merchants a reasonable opportunity to come into compliance with this section."). A reading of the statute that would permit a business to alter its machines such that the capability to electronically print receipts first is put into use after January 1, 2005, but which do not have to become FACTA compliant for another year, is objectively unreasonable. Such a reading does not foster Congress's objectives in protecting consumers from identity theft while at the same time permitting businesses reasonable time and opportunity to comply with FACTA. Congress determined one year constituted reasonable time opportunity for companies to make any device first put into use to print electronic receipts after January 1, 2005 FACTA-compliant up front. Consequently, a business which first puts into use a device to electronically print receipts after January 1, 2005 could not reasonably have expected that it did not need to make such a device FACTA compliant for another year. The Court therefore will deny Defendant's motion to dismiss on this basis.

## III. MOTION TO STRIKE

■ Because part of Defendant's motion to strike repeats arguments from above, the only issue in the motion to strike is whether to strike Plaintiff's request for injunctive relief. Defendant argues that because the statute grants the government the power to seek injunctive relief but the consumer remedies section for a FACTA violation does not, Congress intended that consumers would not be able to pursue injunctive relief for FACTA violations. Plaintiff responds that courts are divided on the issue, and that Congress's silence on the matter does not deprive this Court of its power to issue injunctive relief. Defendant replies that courts since have rejected the lone case upon which Plaintiff relies.

The only circuit and most district courts that have considered the issue have held a private litigant may not pursue injunctive relief under the FCRA, of which FACTA is a part. The Fifth Circuit conducted the most comprehensive analysis in *Washington v. CSC Credit Services Inc.,* 199 F.3d 263 (5th Cir.2000). In *Washington,* the Fifth Circuit noted that 15 U.S.C. § 1681p grants federal courts jurisdiction over " '[a]n action to enforce any liability created under this subchapter'." *Id.* at 268 (quoting 15 U.S.C. § 1681p). "The term 'liability' is discussed in the FCRA's civil liability provisions, both of which expressly refer to damages and attorney fees without mentioning injunctive relief." *Id.* (citing 15 U.S.C. §§ 1681n–1681*o*). In contrast, the FCRA elsewhere expressly grants the Federal Trade Commission ("FTC") the power to obtain injunctive relief. *Id.* (citing 15 U.S.C. § 1681s(a); 15 U.S.C. § 45(b)). The Fifth Circuit thus reasoned that "the affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are

expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC." *Id.*

The Fifth Circuit further noted that the subsequent enactment of 15 U.S.C. § 1681u bolsters its reading of the FCRA. Section 1681u provides consumers with a damages remedy against the government for improperly obtaining information and also specifically permits a consumer to pursue injunctive relief. *See id.* at 269 (citing 15 U.S.C. § 1681u(m)). Consequently, the Fifth Circuit reasoned that "where Congress intended to allow private injunctive relief under the FCRA, it expressly stated that this relief was available. This language would be unnecessary if injunctive relief were otherwise available." *Id.; see also Yeagley v. Wells Fargo & Co.,* 2006 WL 193257, *2–3 (N.D.Cal. 2006) (unpublished) (adopting Fifth Circuit's analysis).

The Ninth Circuit has not addressed this issue explicitly, nor has it addressed the availability of injunctive relief under the Federal Debt Collection Practices Act ("FDCPA"), a statute with a structure similar to the FCRA. However, the Third Circuit has addressed the issue with respect to the FDCPA and reached a similar conclusion to the Fifth Circuit. *Weiss v. Regal Collections,* 385 F.3d 337, 341–42 (3d Cir.2004) (citing 15 U.S.C. § 1692k(a), which gives damages remedies to consumers, and § 1692*l*, which gives the FTC the right to pursue equitable remedies).

Plaintiff cites *Andrews v. Trans Union Corp. Inc.,* which held a private litigant could pursue injunctive relief under California state law, and then stated in dicta that the FCRA also would allow the plaintiff to pursue injunctive relief on her own behalf, even if she could not do so on the public's behalf. 7 F.Supp.2d 1056, 1083–84 (C.D.Cal.1998). Other courts subsequently

have declined to follow *Andrews. See Howard v. Blue Ridge Bank,* 371 F.Supp.2d 1139, 1145 (N.D.Cal.2005) ("This Court is not persuaded by *Andrews* and instead concludes that the FCRA does clearly preclude injunctive relief."); *Poulson v. Trans Union, LLC,* 370 F.Supp.2d 592, 593 (E.D.Tex.2005).

The only relevant Ninth Circuit authority is *Greenway v. Information Dynamics, Ltd.,* in which the Ninth Circuit affirmed the district court's certification of an injunctive relief class under the FCRA 524 F.2d 1145, 1146 (9th Cir.1975) (citing *Greenway v. Information Dynamics, Ltd.,* 399 F.Supp. 1092 (D.Ariz.1974)). However, the Ninth Circuit did not address in *Greenway* the specific issue of whether a private litigant could pursue injunctive relief under the FCRA. The only issue before the Ninth Circuit was whether the appellant was a consumer reporting agency as defined under the FCRA. *Id.*

The Court concludes that given the FCRA's plain language and structure, an individual consumer cannot pursue injunctive relief under § 1681n. Congress set forth in § 1681n the remedies available to the consumer, and those remedies do not include injunctive relief. Where Congress intended either the FTC or a consumer to be entitled to pursue injunctive relief, Congress made the availability of equitable remedies explicit. The Court therefore will grant Defendant's motion to strike Plaintiff's request for injunctive relief.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. # 19) is hereby DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Strike Portions of Plaintiff Lety Ramirez's Complaint (Doc. # 20) is hereby GRANTED in part and DENIED in part. It is granted in that

the Court will strike from the Complaint Plaintiff's request for injunctive relief. The motion is denied in all other respects.